**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| ROGER ROGOFF, | Civil Action No. 2:26-cv-02566 |
| Plaintiff, | **PLAINTIFF ROGER ROGOFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| vs. | |
| DONALD J. TRUMP, in his official capacity as President of the United States; EXECUTIVE OFFICE OF THE PRESIDENT; TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; and U.S. DEPARTMENT OF JUSTICE, | NOTE ON MOTION CALENDAR: AUGUST 18, 2026 |
| | ORAL ARGUMENT REQUESTED |
| Defendants. | |

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND....................................................................................................3

    A.    Constitutional and Statutory Framework for U.S. Attorney Appointment and Removal ....................................................................................................3

    B.    A Vacancy Arises in the Office of U.S. Attorney for W.D. Washington...............5

    C.    The Court Appoints Plaintiff Roger Rogoff ..............................................................6

    D.    Defendants Purport to Fire Rogoff, as They Have Fired Other § 546(d) Appointees ................................................................................................................7

III. LEGAL STANDARD............................................................................................9

IV. ARGUMENT.........................................................................................................9

    A.    Rogoff Is Likely to Succeed on the Merits of His Claim That He Was Unlawfully Fired......................................................................................................9

        1.    Defendants' Removal of Rogoff Violates Congress's Statutory Framework for the Appointment and Removal of Interim U.S. Attorneys........................................................................................................9

        2.    Rogoff's Removal Violates the Appointments Clause ..............................13

        3.    Section 546(d) Does Not Unduly Interfere with the President's Authority ....................................................................................................16

        4.    Rogoff Is Entitled to a Preliminary Injunction .........................................19

    B.    Absent Injunctive Relief, Rogoff Will Suffer Irreparable Harm ...........................19

    C.    The Equities and the Public Interest Strongly Favor an Injunction ......................21

        1.    The Public Has an Interest in Preserving the Separation of Powers..........21

        2.    The Public Has an Interest in the Administration of Justice.....................22

        3.    Defendants Will Not Suffer Harm if Rogoff Is Granted Injunctive Relief..........................................................................................................23

V. CONCLUSION.....................................................................................................23

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION          -i-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abramowitz v. Lake*,
803 F. Supp. 3d 1 (D.D.C. 2025) ......................................................................................20

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ..........................................................................................9

*Aviel v. Gor*,
780 F. Supp. 3d 1 (D.D.C. 2025) ......................................................................................20

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023) ..........................................................................................23

*Berry v. Reagan*,
1983 WL 538 (D.D.C. Nov. 14, 1983) ..............................................................................20

*Blake v. United States*,
103 U.S. 227 (1880) ..........................................................................................................16

*Blanche v. Perlmutter*,
2026 WL 1871314 (U.S. June 30, 2026) ..........................................................................18

*Carcieri v. Salazar*,
555 U.S. 379 (2009) ..........................................................................................................10

*Cook v. Trump*,
804 F. Supp. 3d 14 (D.D.C. 2025) ..............................................................................20, 21

*Dellinger v. Bessent*,
2025 WL 887518 (D.C. Cir. Mar. 10, 2025) ....................................................................20

*Dellinger v. Bessent*,
2025 WL 935211 (D.C. Cir. Mar. 27, 2025) ....................................................................20

*Dellinger v. Bessent*,
766 F. Supp. 3d 57 (D.D.C. 2025) ....................................................................................20

*Dubin v. United States*,
599 U.S. 110 (2023) ..........................................................................................................12

*Edmond v. United States*,
520 U.S. 651 (1997) ..................................................................................................1, 3, 11

*Free Enter. Fund v. PCAOB*,
561 U.S. 477 (2010) ..........................................................................................................17

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                                    -ii-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

*In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.*,
　2026 WL 686046 (N.D.N.Y. Mar. 11, 2026) .................................................................22, 23

*In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.*,
　814 F. Supp. 3d 284 (N.D.N.Y. 2026)................................................................................8

*Harper v. Bessent*,
　795 F. Supp. 3d 28 (D.D.C. 2025).................................................................................20

*Harris v. Bessent*,
　775 F. Supp. 3d 164 (D.D.C. 2025)...............................................................................20

*Home Depot USA, Inc. v. Jackson*,
　587 U.S. 435 (2019)......................................................................................................10

*Jones v. Hendrix*,
　599 U.S. 465 (2023)......................................................................................................15

*Kennedy v. Braidwood Mgmt., Inc.*,
　606 U.S. 748 (2025)..............................................................................3, 5, 14, 16, 17

*Keyes v. United States*,
　109 U.S. 336 (1883)......................................................................................................16

*League of Women Voters v. Newby*,
　838 F.3d 1 (D.C. Cir. 2016)..........................................................................................21

*Learning Res., Inc. v. Trump*,
　607 U.S. 229 (2026)......................................................................................................15

*LeBlanc v. U.S. Priv. & Civ. Liberties Oversight Bd.*,
　784 F. Supp. 3d 1 (D.D.C. 2025)..................................................................................20

*Loper Bright Enters. v. Raimondo*,
　603 U.S. 369 (2024)......................................................................................................13

*Lucia v. SEC*,
　585 U.S. 237 (2018)..................................................................................................3, 15

*Mansell v. Mansell*,
　490 U.S. 581 (1989)......................................................................................................12

*Mistretta v. United States*,
　488 U.S. 361 (1989)......................................................................................................18

*Morrison v. Olson*,
　487 U.S. 654 (1988)........................................................................................................4

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION　　　　　　　　　　　　-iii-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

*NLRB v. SW Gen.*,
    580 U.S. 288 (2017)................................................................................................5, 15

*Perlmutter v. Blanche*,
    2025 WL 2627965 (D.C. Cir. Sept. 10, 2025).........................................................20

*Preminger v. Principi*,
    422 F.3d 815 (9th Cir. 2005) ...................................................................................21

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) .................................................................................23

*Sampson v. Murray*,
    415 U.S. 61 (1974)...................................................................................................20

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020)......................................................................................5, 17, 18

*Severino v. Biden*,
    71 F.4th 1038 (D.C. Cir. 2023)................................................................................19

*Trump v. Cook*,
    2026 WL 1855613 (U.S. June 29, 2026) ................................................................19

*Trump v. Slaughter*,
    2026 WL 1855612 (U.S. June 29, 2026) ...........................................................16, 18

*United States v. Arthrex, Inc.*,
    594 U.S. 1 (2021)........................................................................3, 5, 16, 17, 18

*United States v. Comey*,
    810 F. Supp. 3d 768 (E.D. Va. 2025) ........................................................................8

*United States v. Donziger*,
    38 F.4th 290 (2d Cir. 2022) ........................................................................................5

*United States v. Evans-Martinez*,
    611 F.3d 635 (9th Cir. 2010) ...................................................................................13

*United States v. Gantt*,
    194 F.3d 987 (9th Cir. 1999) .......................................................................... passim

*United States v. Garcia*,
    2025 WL 2784640 (D. Nev. Sept. 30, 2025)............................................................8

*United States v. Giraud*,
    160 F.4th 390 (3d Cir. 2025) .................................................................................7, 8

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION    -iv-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

*United States v. Hilario*,
   218 F.3d 19 (1st Cir. 2000)............................................................................................13

*United States v. James*,
   810 F. Supp. 3d 752 (E.D. Va. 2025) ...........................................................................8

*United States v. Martinez*,
   565 F. Supp. 2d 1270 (D.N.M. 2008) ..........................................................................13

*United States v. Naviwala*,
   825 F. Supp. 3d 451 (D.N.J. 2026) ..................................................................8, 13, 22

*United States v. Perkins*,
   116 U.S. 483 (1886).......................................................................................................16

*United States v. Ramirez*,
   807 F. Supp. 3d 1086 (C.D. Cal. 2025) .........................................................................8

*United States v. Ramirez-Martinez*,
   2026 WL 113431 (D.N.M. Jan. 14, 2026) .....................................................................8

*United States v. Rodgers*,
   461 U.S. 677 (1983)........................................................................................................10

*United States v. Sumitomo Marine & Fire Ins. Co.*,
   617 F.2d 1365 (9th Cir. 1980) .......................................................................................21

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   959 F.3d 1201 (9th Cir. 2020) .......................................................................................12

*Washington v. Reno*,
   35 F.3d 1093 (6th Cir. 1994) .........................................................................................21

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)..............................................................................................................9

*Young v. U.S. ex rel. Vuitton et Fils S.A.*,
   481 U.S. 787 (1987)..........................................................................................................5

**FEDERAL STATUTES**

5 U.S.C. § 3345..........................................................................................................2, 5, 16

5 U.S.C. § 3346.....................................................................................................2, 5, 11, 16

5 U.S.C. § 3349a ................................................................................................................5

28 U.S.C. § 516...............................................................................................................17

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                                 -v-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

28 U.S.C. § 518............................................................................................................17

28 U.S.C. § 519............................................................................................................17

28 U.S.C. § 541...................................................................................................... passim

28 U.S.C. § 546...................................................................................................... passim

28 U.S.C. § 547........................................................................................................6, 21

28 U.S.C. § 593..............................................................................................................4

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. II, § 2, cl. 2 ..................................................................................... passim

**LEGISLATIVE MATERIALS**

153 Cong. Rec. S1993 (2007)........................................................................................4

153 Cong. Rec. S1994 (2007)...................................................................................4, 11

Act of March 3, 1863, ch. 93, § 2, 12 Stat. 768 ............................................................4

Pub. L. No. 99-646, § 69, 100 Stat. 3592 (1986)..........................................................4

Pub. L. No. 109-177, § 502, 120 Stat. 192 (2006).........................................................4

Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007)...............................................................4

**OTHER AUTHORITIES**

2 James L. High, Law of Injunctions § 1315 (2d ed. 1880) ........................................19

The Federalist No. 76 (A. Hamilton) (C. Rossiter ed., 1961)......................................15

U.S. Att'ys—Removal of Ct.-Appointed U.S. Att'y (28 U.S.C. §§ 541, 546),
3 Op. O.L.C. 448 (1979) ...............................................................................13

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                                              -vi-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

# I. INTRODUCTION

The U.S. District Court for the Western District of Washington validly appointed Roger Rogoff as U.S. Attorney for this district pursuant to express statutory authority that Congress provided for filling vacancies like this one, 28 U.S.C. § 546(d).  That statute is firmly rooted in, and designed to protect, Congress's Appointments Clause power to prescribe the method for filling inferior officer vacancies, including for U.S. Attorneys.  *United States v. Gantt*, 194 F.3d 987, 998-1000 (9th Cir. 1999), *overruled in part on other grounds*, *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008).  Under the statute, Rogoff continues to serve until a successor is named through the default method of selection under the Appointments Clause: presidential nomination and Senate confirmation.  28 U.S.C. §§ 541(a), 546(d).  Defendants' effort to oust Rogoff from office violates the clear commands of § 546.  Defendants lack any basis—statutory or constitutional—for purporting to countermand the clear dictates of that provision.

The Appointments Clause "is among the significant structural safeguards of the constitutional scheme."  *Edmond v. United States*, 520 U.S. 651, 659 (1997).  It gives the President a central role in naming officers of the United States, while also guaranteeing a vital role for Congress.  That arrangement recognizes the President's need for sufficient control over those who execute the laws while simultaneously giving the Senate the power to give—or withhold—consent, thus guarding against the consolidation of power in any branch and the threat to individual liberty that comes with it.  For inferior officers, like U.S. Attorneys, the Appointments Clause authorizes Congress to "vest" the appointment of such officers, "as they think proper," in the President alone, in the courts, or in department heads.  U.S. Const. art. II, § 2, cl. 2.

U.S. Attorneys are appointed by the default method of presidential nomination and Senate confirmation.  28 U.S.C. § 541(a).  To ensure continuity in U.S. Attorney offices, Congress has exercised its constitutional power to provide mechanisms for temporarily filling vacancies.  Section 546 and the Federal Vacancies Reform Act ("FVRA") give the Executive ways to temporarily fill U.S. Attorney vacancies without the Senate's involvement, but both limit

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                                          -1-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

the amount of time that the Executive's interim appointee may serve. *See* 28 U.S.C. § 546(a), (c); 5 U.S.C. §§ 3345, 3346.

As relevant here, under § 546, the Attorney General may appoint an interim U.S. Attorney, and that appointment may last no longer than 120 days. 28 U.S.C. § 546(a), (c). Once that "appointment expires," the district court may appoint an interim officeholder. *Id.* § 546(d). A court-appointed U.S. Attorney serves "until the vacancy is filled" with a Senate-confirmed appointee. *Id.* § 546(d); *see id.* § 541(a). That carefully calibrated design balances the same considerations and furthers the same separation-of-powers principles as the Appointments Clause itself. It ensures that the Executive retains a central role in selecting executive officials. But, by placing time limits on the Executive's interim appointments, it also prevents the Executive from indefinitely evading Congress's constitutional role in appointments and incentivizes the President to identify a nominee whom the Senate will confirm.

In this case, after the Attorney General's 120-day interim appointment and the time limits under the FVRA indisputably expired, the Court exercised its power under § 546(d) to appoint Rogoff as U.S. Attorney. But the President purported to fire Rogoff immediately, without anyone confirmed by the Senate to replace him. That contravenes the plain text of § 546(d), which makes clear that a court-appointed U.S. Attorney serves until the President appoints a replacement with the Senate's consent.

Rogoff's firing also violates the Constitution. The Appointments Clause authorizes Congress to decide how inferior officers are appointed. Congress did so by permitting the Executive to appoint interim U.S. Attorneys for a specified time and then shifting that appointment power to the courts, whose appointment remains in place until a presidential nominee is confirmed by the Senate. Ignoring Congress's dictates, the President purported to fire Rogoff, leaving in place a *de facto* office head long after the Executive's interim appointment power had expired and without ever seeking Senate confirmation. In doing so, the President usurped Congress's constitutional role in deciding how inferior officers are appointed. Notably, the constraint § 546(d) places on the method for removing court-appointed U.S.

PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION                                    -2-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

Attorneys is constitutional and far less restrictive than limitations that have been upheld in other contexts. Given the plain constitutional and statutory problems with this firing, Rogoff is likely to succeed on the merits of his claims.

The remaining preliminary injunction factors likewise favor relief. Allowing Rogoff's removal to stand would cause severe, irreparable harm to Rogoff by impairing his ability to fulfill the duties of U.S. Attorney lawfully entrusted to him by the Court. It would also significantly injure the public interest in a tripartite constitutional structure and the administration of justice in this district by improperly removing Rogoff and allowing an invalidly appointed U.S. Attorney to exercise the powers of that office. This Court should enter a preliminary injunction against Defendants (other than the President) invalidating the purported removal, restoring Rogoff, and ensuring that he can continue his service as U.S. Attorney unimpeded by Defendants until a Senate-confirmed U.S. Attorney is appointed.

## II. BACKGROUND

### A. Constitutional and Statutory Framework for U.S. Attorney Appointment and Removal

The Appointments Clause "prescribes the exclusive means" for appointing officers of the United States. *Lucia v. SEC*, 585 U.S. 237, 244 (2018). Its requirements differ depending on the type of officer in question. *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 759-60 (2025). "Principal" officers must be nominated by the President and confirmed by the Senate. *Id.*; *see* U.S. Const. art. II, § 2, cl. 2. "Inferior officers," by contrast, do not necessarily have to be selected in this manner. *Kennedy*, 606 U.S. at 760. Presidential nomination and Senate confirmation is the "default" rule for their appointment. *United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021) (quoting *Edmond*, 520 U.S. at 660). But the Founders gave Congress the option to "vest the Appointment" of inferior officers, "as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

U.S. Attorneys are inferior officers whose selection must comply with these requirements. *Gantt*, 194 F.3d at 999. They ordinarily are appointed by the President, with the advice and consent of the Senate, to a four-year term, serving until a replacement is confirmed.

PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION   -3-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

28 U.S.C. § 541(a)-(b).  But recognizing that vacancies may arise, Congress enacted stopgap measures that allow interim appointments while a new officeholder is nominated and confirmed.

*First*, Congress has passed a vacancies statute specific to U.S. Attorneys.  Under § 546, the Attorney General may appoint an interim U.S. Attorney to fill a vacant seat for 120 days or until a replacement is nominated and confirmed, whichever comes earlier.  28 U.S.C. § 546(a), (c).  After the 120-day term expires, the interim appointment power shifts to the district court, which may appoint a U.S. Attorney to serve "until the vacancy is filled."  *Id.* § 546(d).  A vacancy is filled only when the President nominates and the Senate confirms a replacement.  *Id.* § 541(a).

This power-shifting structure is express and intentional.  In 2006, Congress briefly eliminated the district court's role and removed the 120-day limit, allowing the Attorney General's designee to serve indefinitely.  *See* Pub. L. No. 109-177, § 502, 120 Stat. 192, 246 (2006).  But almost immediately, those amendments "invited and abetted an apparent abuse of power" by the Executive Branch that "threaten[ed] to undermine the effectiveness and professionalism of U.S. attorneys offices."  153 Cong. Rec. S1993 (2007).  Accordingly, Congress reverted to the prior version of the statute just one year later.  *See* Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007).

By returning to the status quo, Congress restored a longstanding judicial authority.  The Attorney General's power to appoint an interim U.S. Attorney is of recent vintage—1986, *see* Pub. L. No. 99-646, § 69, 100 Stat. 3592, 3616-17 (1986).  But the *Judiciary's* authority to appoint interim U.S. Attorneys to serve until a successor is nominated and confirmed dates to the 1860s.  *See Gantt*, 194 F.3d at 998; Act of March 3, 1863, ch. 93, § 2, 12 Stat. 768, 768.  Congress has emphasized that the Judiciary's role in interim appointments is a "vital limit[]" on the Executive's authority that incentivizes the Executive "to fill vacancies with Senate-confirmable nominees."  153 Cong. Rec. S1994 (2007).[1]

---

[1] U.S. Attorneys are not the only Executive Branch prosecutors the Judiciary appoints.  Historically, they have (on application) appointed independent counsel.  28 U.S.C. § 593; *Morrison v. Olson*, 487 U.S. 654, 676 (1988) ("[W]e do not think it impermissible for Congress

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                                                          -4-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

*Second*, the FVRA—which applies generally across the Executive Branch—provides that the office's "first assistant . . . shall perform the functions and duties of the office" automatically. 5 U.S.C. § 3345(a)(1); *NLRB v. SW Gen.*, 580 U.S. 288, 303 (2017). The FVRA gives the President two alternatives to the default rule. The President may appoint as Acting U.S. Attorney someone who has been confirmed by the Senate for another office, or an officer or employee of the agency who meets certain statutorily prescribed seniority and experience requirements. 5 U.S.C. § 3345(a)(2)-(3). Under the FVRA, any acting official may serve only up to 210 days (or for a longer defined term during a presidential transition period, *id.* § 3349a(b)) "beginning on the date the vacancy occurs" or, subject to certain requirements, while a nomination to the office is pending. *Id.* § 3346(a).

Congress may also prescribe the method by which an inferior officer under the Appointments Clause may be removed. So long as the Executive retains sufficient control over an inferior officer, Congress may limit the Executive's power to remove that officer. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 217-18 (2020); *Arthrex*, 594 U.S. at 26-27; *Kennedy*, 606 U.S. at 765-69.

**B.      A Vacancy Arises in the Office of U.S. Attorney for W.D. Washington**

The last Senate-confirmed U.S. Attorney in the Western District of Washington resigned in June 2023. Declaration of Hailyn J. Chen ("Chen Decl.") Ex. 1. Upon his resignation, Tessa Gorman, then First Assistant U.S. Attorney, became Acting U.S. Attorney pursuant to the FVRA. *Id.* After the FVRA's 210-day time limit expired, then-Attorney General Merrick Garland appointed Gorman as interim U.S. Attorney pursuant to § 546(a), and she was subsequently appointed by the Court pursuant to § 546(d). *Id.* Exs. 2, 3. President Trump then

---

to vest the power to appoint independent counsel in a specially created federal court."). They likewise appoint special prosecutors pursuing criminal contempt. *See Young v. U.S. ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 793 (1987) ("[I]t is long settled that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders, authority which necessarily encompasses the ability to appoint a private attorney to prosecute the contempt."); *see also United States v. Donziger*, 38 F.4th 290, 294 (2d Cir. 2022) (appointment of special counsel by court did not violate separation of powers).

purported to fire Gorman, after which Teal Luthy Miller (who was First Assistant U.S. Attorney) assumed the title of Acting U.S. Attorney pursuant to the FVRA. *Id*. Ex. 4. Then-Attorney General Pamela Bondi subsequently purported to appoint Charles Neil Floyd as interim U.S. Attorney pursuant to § 546(a); he was sworn in on October 6, 2025. *Id*. Ex. 5.

On February 2, 2026, Bondi designated Floyd "First Assistant U.S. Attorney" for the district. *Id*. Ex. 6. While Floyd no longer claims the title of U.S. Attorney, he continues to hold himself out as the *de facto* head of the U.S. Attorney's Office, *id*. Ex. 7, and the Department of Justice's website states that "First Assistant U.S. Attorney Charles Neil Floyd is the chief federal law enforcement officer in Western Washington," *id*. Ex. 8.

### C.   The Court Appoints Plaintiff Roger Rogoff

On January 14, 2026, the Court issued an order stating that, "in the event the President does not appoint, with the advice and consent of the Senate, a United States Attorney for the Western District of Washington before February 3, 2026, the Court intends to appoint a United States Attorney under Section 546(d) to serve until the vacancy is filled." Declaration of Roger Rogoff ("Rogoff Decl.") Ex. 1 at 2. The Court subsequently announced a merit selection panel to evaluate candidates. *Id.* Ex. 2.

Rogoff submitted his name for consideration. *Id.* ¶ 10. Rogoff has practiced law for more than 30 years, including as a state prosecutor, Assistant U.S. Attorney, judge, and director of the Washington Office of Independent Investigations. *Id.* ¶¶ 2-8.

On July 15, 2026, the Court appointed Rogoff as U.S. Attorney pursuant to § 546(d), and he was sworn in that same day. *Id.* ¶¶ 14-15. The Court's appointment order stated: "Mr. Rogoff is authorized to serve as the United States Attorney for the Western District of Washington until the vacancy is filled by an officer appointed by the President with the advice and consent of the Senate in accordance with the United States Constitution, Article II, Section 2 and 28 U.S.C. § 541(a)." *Id.* Ex. 3 at 3. As U.S. Attorney, Rogoff is charged by statute with "prosecut[ing] all offenses against the United States" and "prosecut[ing] or defend[ing] the Government" in civil actions or proceedings, among other responsibilities. 28 U.S.C. § 547.

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                                          -6-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

D.       **Defendants Purport to Fire Rogoff, as They Have Fired Other § 546(d) Appointees**

Less than an hour after he was sworn in, Rogoff was purportedly fired via an email from the Deputy Director of Presidential Personnel that stated: "the President of the United States has directed that I inform you that, pursuant to his authority under 28 U.S.C. 541(c) and Article II of the Constitution, you are hereby removed from the office of the United States Attorney for the Western District of Washington."  Rogoff Decl. ¶¶ 15, 20 & Ex. 5.  No person has yet been nominated, let alone confirmed, to fill the vacancy of U.S. Attorney in this district.  Chen Decl. ¶ 3.

Even before the Court appointed Rogoff, Defendants appeared committed to firing whomever the Court appointed.  Shortly after the Court announced its appointment of a merit selection panel, then-Deputy Attorney General Todd Blanche posted on X: "These candidates do not have the support of POTUS, and I expect they will suffer the same fate as others have when judges ignore Article II."  Declaration of Noelle Smith ("Smith Decl.") Ex. 5.

Blanche was referring to the Executive's firings of court-appointed U.S. Attorneys in other districts.  For example, last year, Alina Habba was appointed by the Attorney General as interim U.S. Attorney for the District of New Jersey under § 546(a).  *See United States v. Giraud*, 160 F.4th 390, 395 (3d Cir. 2025), *reh'g en banc denied*, No. 25-2635 (3d Cir. Jan. 26, 2026).  When Habba was nearing the end of her 120-day term, the district court issued an order stating that, pursuant to § 546(d), Desiree Leigh Grace would be U.S. Attorney after the expiration of Habba's term, but Grace was promptly fired.  *Id.*; Smith Decl. Exs. 1-2.  The Attorney General sought to extend Habba's service as U.S. Attorney beyond 120 days through a series of maneuvers courts later determined to be unlawful, prompting Habba's resignation. *Giraud*, 160 F.4th at 395-96, 406-07; Chen Decl. Ex. 10.  Following months of turbulence caused by the lack of lawfully appointed leadership, the district court reached an "agreement" with the "administration" to appoint a new § 546(d) designee.  Chen Decl. Ex. 11.  Similar scenarios played out in the Northern District of New York and the Eastern District of Virginia, except those offices are currently led by *de facto* office heads who were not appointed by the

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                                             -7-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

district courts and never even nominated for consideration by the Senate. *See id.* ¶¶ 14-18 & Exs. 12-16; Smith Decl. Exs. 3-4; *In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.*, 814 F. Supp. 3d 284, 288-89, 300-01 (N.D.N.Y. 2026), *appeal filed*, No. 26-156 (2d Cir. Jan. 23, 2026); *United States v. James*, 810 F. Supp. 3d 752, 755-57, 768 (E.D. Va. 2025), *appeal filed*, No. 25-4673 (4th Cir. Dec. 22, 2025); *United States v. Comey*, 810 F. Supp. 3d 768, 772-74, 786-87 (E.D. Va. 2025), *appeal filed*, No. 25-4674 (4th Cir. Dec. 22, 2025).[2]

In several districts, the Executive's failure to abide by statutory limitations on the appointment of interim or acting U.S. Attorneys has led courts to disqualify the unlawfully appointed officials either from serving in that role or from participating in specified matters. *See Giraud*, 160 F.4th at 406-07; *Grand Jury Subpoenas*, 814 F. Supp. 3d at 300; *United States v. Ramirez*, 807 F. Supp. 3d 1086, 1114 (C.D. Cal. 2025); *United States v. Ramirez-Martinez*, 2026 WL 113431, at *23, *26 (D.N.M. Jan. 14, 2026); *United States v. Garcia*, 2025 WL 2784640, at *18 (D. Nev. Sept. 30, 2025), *appeal filed*, No. 25-6465 (9th Cir. Oct. 14, 2025); *United States v. Naviwala*, 825 F. Supp. 3d 451, 531 (D.N.J. 2026). Many of those districts remain without a lawfully appointed U.S. Attorney. *See* Chen Decl. ¶¶ 15, 21-23.

Other harms have flowed from these maneuvers. Defense attorneys and courts have called into question the legality of criminal prosecutions and process, *e.g.*, *Naviwala*, 825 F. Supp. 3d at 465 ("warn[ing] that any further attempts to unlawfully fill the office will result in dismissals of pending cases")—in some districts leading to dismissal of indictments and quashing of grand jury subpoenas, *James*, 810 F. Supp. 3d at 763-68; *Comey*, 810 F. Supp. 3d at 781-87; *Grand Jury Subpoenas*, 814 F. Supp. 3d at 299-300. And confusion over who heads an office impairs the orderly administration of justice and the public's trust in the judicial system.

---

[2] In some districts, the President has not sought to fire § 546(d) appointees, including where district courts chose to appoint the same person whom the Attorney General had appointed under § 546(a). *See, e.g.*, Chen Decl. Exs. 17-18.

PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
Case No. 2:26-cv-02566
-8-
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

## III. LEGAL STANDARD

A plaintiff seeking a preliminary injunction must demonstrate that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction may issue where there are "serious questions going to the merits" and "a hardship balance that tips sharply toward the plaintiff," if the other two elements are met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

## IV. ARGUMENT

### A. Rogoff Is Likely to Succeed on the Merits of His Claim That He Was Unlawfully Fired

#### 1. Defendants' Removal of Rogoff Violates Congress's Statutory Framework for the Appointment and Removal of Interim U.S. Attorneys

The Constitution gives Congress the power to prescribe how inferior officers will be appointed. U.S. Const. art. II, § 2, cl. 2. Congress has done so for U.S. Attorneys via § 546. *See Gantt*, 194 F.3d at 999. This Court acted in accordance with the express terms of that congressional enactment when it appointed Rogoff as U.S. Attorney. The President may not summarily fire him. Rather, the text and structure of § 546 make plain that the President may remove a § 546(d) appointee only by appointing a Senate-confirmed successor.[3]

Beginning with the text, § 546 provides that the court's designee will "serve until the vacancy is filled." 28 U.S.C. § 546(d). A vacancy is "filled" when a President's nominee is confirmed by the "advice and consent of the Senate." *Id.* § 541(a). In other words, a court-designated U.S. Attorney may be removed only by "fill[ing]" the "vacancy" with a Senate-confirmed nominee. *Id.* § 546(d); *see also Gantt*, 194 F.3d at 1000 ("[T]he President retains the

---

[3] The firing is also contrary to the Court's order appointing Rogoff, which states that he is "authorized to serve" until there is a Senate-confirmed replacement. Rogoff Decl. Ex. 3 at 3.

PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION    -9-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

power to replace the court-appointed United States Attorney with an Attorney appointed by the President and confirmed by the Senate.").

A comparison between the text in § 546(d) and the text of the Attorney General's appointment authority under § 546(c) confirms that conclusion. The Attorney General's designee "may serve" until a successor is named or the 120-day time limit expires. 28 U.S.C. § 546(c). "The word 'may,' when used in a statute, usually implies some degree of discretion." *United States v. Rodgers*, 461 U.S. 677, 706 (1983). By contrast, the district court appoints a designee "to serve until the vacancy is filled." 28 U.S.C. § 546(d). Particularly when read against the phrasing of § 546(c), § 546(d) is expressly mandatory—specifying that the President cannot force the district court's designee out of the U.S. Attorney position except by filling the vacancy. Interpreting § 546(d) to allow the President to terminate a court's appointee without obtaining Senate confirmation would read the phrase "to serve until the vacancy is filled" out of the statute entirely. That runs afoul of the basic canon of construction that courts "are obliged to give effect, if possible, to every word Congress used." *Carcieri v. Salazar*, 555 U.S. 379, 391 (2009) (citation omitted).

The structure of § 546 confirms what the text plainly states. *See Home Depot USA, Inc. v. Jackson*, 587 U.S. 435, 441 (2019) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (citation omitted)). The statute initially confers interim appointment authority on the Attorney General for a period of 120 days before shifting that authority to the district court for the remainder of the vacancy. 28 U.S.C. § 546(a), (c), (d). That system balances three aims:

*First*, § 546 ensures that the work of U.S. Attorney's Offices can continue uninterrupted by allowing for the interim appointment of a U.S. Attorney by the Attorney General and, later, by courts. And unlike the FVRA—which authorizes acting service only for a limited period, unless a nomination is pending—§ 546(d) authorizes interim service until the vacancy is filled.

*Second*, § 546 preserves the President's role in selecting executive officials. It gives the Attorney General authority to name an interim officeholder in the first instance. *Id.* § 546(a). Together with the FVRA, the statutory framework allows the Executive Branch to install an acting official for nearly a year (or longer, if a nomination is pending), which is more than enough time for a President to nominate, and the Senate to confirm, a U.S. Attorney. *See id.* § 546(a), (c); 5 U.S.C. § 3346.

*Third*, the statute safeguards the Senate's advice-and-consent role by incentivizing the President to nominate a candidate whom the Senate will approve. Although the Executive initially enjoys discretion to install an interim U.S. Attorney, the statute transfers that power to the courts after the specified time period, which encourages the President to resort to the usual channel of obtaining the Senate's consent to fill the vacancy. *See* 153 Cong. Rec. S1994 (2007) (explaining the Judiciary's role in interim appointments incentivizes the Executive "to fill vacancies with Senate-confirmable nominees"). In doing so, the statute curtails the Executive's discretion to appoint political allies unless the Senate concurs in their selection, thereby promoting the separation-of-powers principles that the Appointments Clause protects. *See Edmond*, 520 U.S. at 659 (Senate confirmation "serves both to curb Executive abuses of the appointment power" and "to promote a judicious choice of [persons] for filling the offices of the union" (alteration in original)).

Allowing the Executive to remove § 546(d) designees by means other than filling the vacancy with a Senate-confirmed U.S. Attorney would upend that framework. A President would never need to submit a nominee to the Senate if he could fire any interim official appointed by the court under § 546(d) and—precisely as he has done here and in other districts—install his choice for the job as the office's first assistant to serve as a *de facto* office head even after the time limits for Executive interim appointments under the FVRA and § 546 have expired.

That result cannot be reconciled with Congress's power over such appointments and its evident intent in enacting § 546. It is inconceivable that Congress would intentionally limit the

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                     -11-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

duration of the Attorney General's appointment and maintain the Judiciary's historical role in appointing interim U.S. Attorneys so that the President could simply fire the district court's designee immediately, restoring his preferred official to head the office. Such an interpretation would eliminate any incentive for the President to nominate a candidate who can obtain the Senate's consent. And it would give the President plenary control over who sits at the head of a U.S. Attorney's Office, rendering superfluous the district court's statutory role in naming interim officials.

Defendants' invocation of another statutory provision, 28 U.S.C. § 541(c), that allows removal of U.S. Attorneys by the President, Rogoff Decl. Ex. 5, is misplaced. That provision governs the removal of *Senate-confirmed* U.S. Attorneys, not U.S. Attorneys appointed by a court under § 546(d). Section 541(c) is the last subsection of a statute whose first two subsections govern the appointment procedure and tenure for Senate-confirmed U.S. Attorneys. 28 U.S.C. § 541(a); *see id.* § 541(b) (setting time limits distinct from those in § 546). It follows that the at-will removal provision of § 541(c) likewise applies to Senate-confirmed U.S. Attorneys alone. *See Mansell v. Mansell*, 490 U.S. 581, 591-92 (1989) (finding it "unlikely that every subsection of" a statutory provision "except [one]" concerned a particular subject). Section 546 covers a different scenario; as its text and title make clear, it applies when the office is "vacant" of a Senate-confirmed U.S. Attorney. *See* 28 U.S.C. § 546(a), (c)(1), (d); *Dubin v. United States*, 599 U.S. 110, 120-21 (2023) (using the "title of a statute" as an interpretive tool (citation omitted)).

Additionally, reading § 541 and § 546 to cover different scenarios is the only interpretation of the two provisions that creates a "coherent regulatory scheme." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1214 (9th Cir. 2020) (citation omitted). Given the choice between a construction of two statutes that "fit[s] . . . all parts into an harmonious whole" and one that would "essentially nullify" one of the provisions, courts must choose the former. *Id.* (citation omitted). Here, that principle requires

PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
Case No. 2:26-cv-02566
-12-
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

the conclusion that § 541(c)'s at-will removal provision applies to Senate-confirmed U.S. Attorneys only; a contrary conclusion would nullify § 546(d).

Although a few nonbinding cases have suggested in passing that § 541(c) allows the removal of court-designated U.S. Attorneys, those decisions lack any persuasive force. Those cases concerned challenges by criminal defendants to the appointment of interim U.S. Attorneys, not to their removal; thus, the question of whether the Executive could remove a judicial appointee was not at issue. *See, e.g.*, *United States v. Hilario*, 218 F.3d 19, 21-22, 27 (1st Cir. 2000); *United States v. Martinez*, 565 F. Supp. 2d 1270, 1271, 1275 (D.N.M. 2008); *Naviwala*, 825 F. Supp. 3d at 465, 474. Neither the parties nor the courts confronted executive attempts to *remove* a judicially appointed U.S. Attorney or engaged with the arguments that are central to this case. *See United States v. Evans-Martinez*, 611 F.3d 635, 641 n.9 (9th Cir. 2010) ("[a]bsent analysis or explanation," a court's conclusion is "unpersuasive").[4]

### 2.      Rogoff's Removal Violates the Appointments Clause

Permitting Rogoff's removal would undo Congress's exercise of its power to determine how and by whom inferior officers are appointed and effectively write the Senate out of the U.S. Attorney confirmation process. The Constitution does not tolerate that result.

The Appointments Clause grants Congress the authority to specify the mode of appointing inferior officers, including U.S. Attorneys. *Gantt*, 194 F.3d at 999. It provides that Congress—and Congress alone—"may by Law vest the Appointment of . . . inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. Congress has exercised that authority. While, in the regular course, U.S. Attorneys must be appointed by the default method of presidential nomination and Senate

---

[4] For the foregoing reasons, a 1979 opinion of the Office of Legal Counsel concluding that § 541(c) gives the President the power to remove a court-appointed U.S. Attorney is also not persuasive. *See* U.S. Att'ys—Removal of Ct.-Appointed U.S. Att'y (28 U.S.C. §§ 541, 546), 3 Op. O.L.C. 448 (1979). Moreover, the opinion was issued long before Congress enacted the FVRA in 1998 and reinstated § 546(d) in 2007, both of which clarified the congressional intent of the statutory scheme. *See supra* pp. 4-5. In any event, the opinion is not entitled to any deference from the Court. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 396 (2024).

confirmation, 28 U.S.C. § 541(a), Congress has specified that, in the case of a vacancy, the Attorney General may temporarily designate an interim officeholder, *id.* § 546(a).  And it has directed that, after expiration of the Attorney General's appointee's service, "*the district court . . . may appoint a United States attorney to serve until the vacancy is filled.*"  *Id.* § 546(d) (emphasis added).

Here, the Court exercised that congressionally conferred power when, after considering Rogoff's exceptional qualifications and demonstrated commitment to public service, it decided he was the right person to serve as U.S. Attorney until the President nominates and the Senate confirms a permanent U.S. Attorney.  By immediately firing Rogoff—consistent with the Executive's practice of firing anyone a district court appoints without "the support of POTUS," Smith Decl. Ex. 5—and installing a *de facto* replacement, the President has attempted to negate Congress's exercise of its constitutionally granted power.  In enacting § 546(d), Congress vested the appointment of interim U.S. Attorneys, in circumstances like these, in a "Court[] of Law," *not* "in the President alone."  U.S. Const. art. II, § 2, cl. 2.  The President cannot grant himself the authority to make those interim appointments instead, nor can he rewrite § 546(d) to require presidential approval of the district court's choice.  But in purporting to remove Rogoff, the President has attempted to do both—a result that would nullify Congress's decision to give the Court the appointment power.[5]

The Executive's attempt to override Congress's exercise of its constitutional authority regarding the appointment of U.S. Attorneys is no small matter.  The Appointments Clause, which mandates collaboration between the Executive and Congress, "is more than a matter of etiquette or protocol."  *Kennedy*, 606 U.S. at 760 (citation omitted).  The Founders crafted the Appointments Clause to allow the Executive discretion in appointments.  But they

---

[5] After a court-appointed U.S. Attorney was fired in another district, then-Deputy Attorney General Blanche explained the firing's motivation: "Judges don't pick U.S. Attorneys, @POTUS does."  Smith Decl. Ex. 3.  That explanation directly conflicts with Congress's exercise of its constitutional authority to vest the appointment of inferior officers.  Although Defendants' stated rationale appears to have evolved, *see* Rogoff Decl. Ex. 6, their conduct has remained unchanged, *see supra* Section II.D.

---

simultaneously gave Congress a key role in order to temper any "spirit of favoritism" that could incline the President to select "unfit characters" who possess "no other merit" aside from "being in some way or other personally allied to him."  The Federalist No. 76, at 457-58 (A. Hamilton) (C. Rossiter ed., 1961); *see SW Gen.*, 580 U.S. at 293.  Congress chose to exercise its Appointments Clause power to vest the appointment of interim U.S. Attorneys first in the Attorney General and then in the courts until a vacancy is filled via Senate confirmation.  As explained above, that choice respects the Executive's prerogative to appoint a favored candidate temporarily while maintaining a robust role for the Senate in confirming a long-term appointee through the normal process.  *See SW Gen.*, 580 U.S. at 293 ("The Senate's advice and consent power is a critical structural safeguard of the constitutional scheme." (citation and quotation marks omitted)).

Had Congress meant to authorize a different regime, it would have done so explicitly. Absent a clear statement, courts will not read a statute to "relinquish" a "core congressional power," *Learning Res., Inc. v. Trump*, 607 U.S. 229, 243 (2026), or disturb "historically or constitutionally grounded norms," *Jones v. Hendrix*, 599 U.S. 465, 492 (2023).  Interpreting § 546 to allow the President to fire a court-appointed U.S. Attorney without a Senate-confirmed successor would have precisely that effect.  It would sanction the indefinite service of an office head like Floyd, who currently claims to have all the powers of a U.S. Attorney but who has not been appointed consistent with the Appointments Clause (and the statutes that spring from it). This Court should not read § 546 to permit such an end-run around the Appointments Clause. *See Lucia*, 585 U.S. at 244-45 (an official who "exercise[s] significant authority pursuant to the laws of the United States" is an officer whose selection must comply with the Appointments Clause (citation omitted)); *SW Gen.*, 580 U.S. at 313 n.1 (Thomas, J., concurring) ("structural protections of the Appointments Clause" cannot be "avoided" on the basis that individual "was appointed 'temporarily' to serve as *acting* [officer]").

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                                    -15-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

### 3. Section 546(d) Does Not Unduly Interfere with the President's Authority

Section 546(d) is fully consistent with the separation of powers. Congress may restrict the removal of inferior officers so long as "the President remains responsible for the exercise of executive power." *Arthrex*, 594 U.S. at 27 (upholding statutory scheme where inferior officers where removable only for cause after ensuring principal officer has discretion to review decisions); *see also Kennedy*, 606 U.S. at 765-69. Section 546(d) easily passes that test. *See Gantt*, 194 F.3d at 1000 (holding § 546(d) does not conflict with the Appointments Clause's purpose—to "prevent congressional encroachment upon the executive and judicial branches" (citation omitted)).

*First*, Congress's carefully crafted statutory framework for the appointment of interim U.S. Attorneys grants the Executive substantial power over the selection and removal of interim U.S. Attorneys. The President has multiple ways to appoint his chosen candidate to temporarily fill a vacancy, and he can avoid the need for a court-appointed designee altogether by nominating a candidate to the Senate and invoking the FVRA and § 546(a) to provide that his preferred designee occupies the office while the nomination is pending. *See* 5 U.S.C. §§ 3345, 3346(a)(2); 28 U.S.C. § 546(a). If the President declines to make use of those authorities, and thus triggers § 546(d), he still retains the power to remove the court's designee for any reason by "fill[ing]" the vacancy with a Senate-confirmed U.S. Attorney. 28 U.S.C. § 546(d); *see Gantt*, 194 F.3d at 1000. By empowering the President to "displace" the court-appointed U.S. Attorney through "the appointment of [an]other[]," § 546(d) provides a clear path to removing the officeholder. *Blake v. United States*, 103 U.S. 227, 237 (1880); *see Keyes v. United States*, 109 U.S. 336, 339 (1883). Thus, far from "saddl[ing] [the President] with those with whom he cannot work," *Trump v. Slaughter*, 2026 WL 1855612, at *21 (U.S. June 29, 2026) (emphasis omitted), § 546(d) is a small part of a broader, flexible framework that permits and incentivizes the President to quickly fill vacant offices with Senate advice and consent.

Even considered in isolation, § 546(d) does not impermissibly burden the President's ability to fulfill his constitutional responsibilities. Indeed, it is far less robust than other removal

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                     -16-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

protections the Supreme Court has long blessed.  In *United States v. Perkins*, the Court upheld a statute prohibiting removal of an inferior officer except in cases of "misconduct."  116 U.S. 483, 485 (1886).  Just a few years ago, the Court emphasized again that "inferior officers" may be made removable "only *for cause*" and not "at will" if their "decisions are reviewable by a superior."  *Kennedy*, 606 U.S. at 765, 769 (citing *Arthrex*, 594 U.S. at 16-17, 25-26).  Unlike those statutes, which authorized removal only for "misconduct" or "cause," § 546(d) imposes merely a procedural limitation on *how*, not *why*, the President may remove an inferior officer.  Section 546(d) thus leaves far more control in the hands of the President, because he need not wait for the officeholder to err.

*Second*, § 546(d) leaves the President with ample control over a court-designated U.S. Attorney.  The Supreme Court has upheld removal protections for inferior officers where the Executive Branch, via principal officers, can "direct[] and supervise[]" the inferior officers.  *Arthrex*, 594 U.S. at 25-27.  The combination of the President's unfettered power to remove the principal officer and the principal officer's power to control the inferior officer's day-to-day enables the President to ensure the faithful execution of the laws.  *See id.*; *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 495-96 (2010).  Such is the case here.  The Attorney General, who is removable at will, has "plenary authority" over U.S. Attorneys.  *Gantt*, 194 F.3d at 999.  For example, he oversees all litigation in which the United States is a party and may reassign or personally assert control over a U.S. Attorney's cases.  *Id.*; *see* 28 U.S.C. §§ 516, 518(b), 519.  Those powers are virtually absolute.

This is thus *not* a case in which a removal restriction unconstitutionally impinges on the Executive.  Where the Supreme Court has struck down removal restrictions on inferior officers, those officers had become rival power centers within the Executive Branch, staffed by officers who exercised significant authority but did not answer in any meaningful way to the President.  *See Free Enter. Fund*, 561 U.S. at 495-98.  Here, by contrast, a court-designated U.S. Attorney is not at risk of "unilaterally . . . dictat[ing] and enforc[ing] policy."  *Seila Law*, 591 U.S. at 225

---

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                                        -17-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

(emphasis omitted).  Instead, the framework draws clear lines of accountability within the Executive Branch.

*Slaughter* is not to the contrary because it did not address the propriety of removal protections for inferior officers.  Before *Slaughter*, the Supreme Court had long recognized "two exceptions" to the general rule that the President enjoys unbounded removal power: the first authorized Congress to "provide tenure protections to certain inferior officers," and the second to limit removal in "expert agencies led by a group of principal officers."  *Seila Law*, 591 U.S. at 204 (emphases omitted).  *Slaughter* eliminated the latter but left the former in place.  2026 WL 1855612 at *15, *18 ("Nor do we determine the fate of officials not before us.").[6]  And the Court had good reason not to reach the issue of removal protections for inferior officers: they are differently situated in our constitutional design.  An inferior officer is, by definition, one who is "directed and supervised at some level" by principal officers, *Arthrex*, 594 U.S. at 13 (citation omitted), and thus inherently less likely to intrude on the President's prerogatives than a principal officer.  Article II itself recognizes this distinction, empowering Congress to vest the appointment of inferior officers—but not principal officers—in courts or department heads instead of in the President.  U.S. Const. art. II, § 2, cl. 2.

*Finally*, § 546(d)'s effect on presidential power must be considered in light of how it balances that interest with Congress's express constitutional prerogative to control how appointments of inferior officers are made and to insist on the right to pass on the fitness of such officers.  *See Mistretta v. United States*, 488 U.S. 361, 383 & n.13 (1989) (separation-of-powers inquiries weigh the "extent to which" a statute prevents the Executive "from accomplishing its constitutionally assigned functions" and the "need to promote objectives within the constitutional authority of Congress" (citation omitted)).  As explained, Congress has exercised its constitutional authority to vest the appointment of inferior officers how it sees fit by crafting a

---

[6] The day after handing down *Slaughter*, the Supreme Court denied the Government's request to stay a decision enjoining the removal of an inferior officer—another indication that the inferior-officer exception was not at issue in *Slaughter*.  *See Blanche v. Perlmutter*, 2026 WL 1871314 (U.S. June 30, 2026).

PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION                    -18-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

temporary appointments framework that incentivizes the President to nominate a U.S. Attorney whom the Senate will confirm. *See supra* pp. 9-12. Section 546(d) is part of that system. It comes into play only after the President has had ample time to submit an acceptable nominee to the Senate and has failed to do so. But § 546(d) is critical; if the President could summarily dismiss the court's designee, he could functionally install the official of his choice without ever seeking Senate confirmation. *See supra* pp. 11-12. Section 546(d) thus promotes, rather than undermines, the Framers' allocation of the appointment authority between the branches.

### 4. Rogoff Is Entitled to a Preliminary Injunction

As a wrongfully terminated public official, Rogoff may seek redress through a preliminary injunction reinstating him. As the Supreme Court recently explained, "equity could ensure that 'the actual incumbents of an office may be protected, pending a contest as to their title, from interference with their possession, and with the exercise of their functions,' at least to the extent that they had a likely meritorious claim." *Trump v. Cook*, 2026 WL 1855613, at *10 (U.S. June 29, 2026) (quoting 2 James L. High, Law of Injunctions § 1315 (2d ed. 1880)). Thus, "a court may order that a removed [officer] remain in office during the pendency of litigation if the [officer] is otherwise entitled to a preliminary injunction." *Id.* at *11; *see also Severino v. Biden*, 71 F.4th 1038, 1042-43 (D.C. Cir. 2023) (courts "can enjoin subordinate executive officials to reinstate a wrongly terminated official *de facto*" (citation and quotation marks omitted)).

### B. Absent Injunctive Relief, Rogoff Will Suffer Irreparable Harm

Rogoff's unconstitutional purported removal as U.S. Attorney will cause him irreparable harm that warrants injunctive relief.[7]

Although "routine" terminations of low-level federal employees do not constitute irreparable harm, the Supreme Court has recognized that there may be "genuinely extraordinary situation[s]" in which loss of government employment constitutes irreparable harm, even for

---

[7] Damages for lost pay would not remedy the harm here, and Rogoff does not seek them.

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                                      -19-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

"probationary employees." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974).  Numerous courts have concluded that the unlawful removal of a senior government official and the deprivation of that official's "statutory right to function" presents just such an extraordinary situation causing irreparable harm.  *Berry v. Reagan*, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983); *see, e.g.*, *Harris v. Bessent*, 775 F. Supp. 3d 164, 185-86 (D.D.C. 2025), *rev'd on other grounds*, 160 F.4th 1235 (D.C. Cir. 2025); *Harper v. Bessent*, 795 F. Supp. 3d 28, 45 (D.D.C. 2025), *appeal filed*, No. 25-5268 (D.C. Cir. July 23, 2025), *stayed pending appeal*, 2025 WL 2426660 (D.C. Cir. Aug. 21, 2025); *Abramowitz v. Lake*, 803 F. Supp. 3d 1, 18 (D.D.C. 2025), *appeal filed*, No. 25-5314 (D.C. Cir. Sept. 23, 2025), *motion for stay pending appeal denied*, No. 25-5314 (D.C. Cir. Oct. 6, 2025); *Perlmutter v. Blanche*, 2025 WL 2627965, at *6-8 (D.C. Cir. Sept. 10, 2025) (Pan, J., concurring), *application for stay denied*, 2026 WL 1871314 (U.S.); *Cook v. Trump*, 804 F. Supp. 3d 14, 39-43 (D.D.C. 2025), *application for stay denied*, 2026 WL 1855613 (U.S.); *LeBlanc v. U.S. Priv. & Civ. Liberties Oversight Bd.*, 784 F. Supp. 3d 1, 41-45 (D.D.C. 2025), *stayed pending appeal*, 2025 WL 1840591 (D.C. Cir. July 1, 2025); *Dellinger v. Bessent*, 766 F. Supp. 3d 57, 70-71 (D.D.C. 2025).[8]

Harm to an agency resulting from a lawfully appointed official's removal is an "additional layer of harm on top of [the official's] basic 'right to function'" that can put a case "squarely in the 'genuinely extraordinary situation.'"  *Aviel v. Gor*, 780 F. Supp. 3d 1, 14 (D.D.C. 2025) (citation omitted); *see Cook*, 804 F. Supp. 3d at 40-41 (collecting cases where courts "found it appropriate to take into account the harm that the official's removal would have on the agency").

---

[8] Some of these cases have been stayed pending appeal.  Unreasoned stays do not affect the persuasive authority of a district court's finding of irreparable harm because a stay does not require a determination that the plaintiff was not irreparably harmed.  *See Cook*, 804 F. Supp. 3d at 41-42.  In one such stay, the D.C. Circuit questioned whether the plaintiff's harm was irreparable but ultimately based its stay decision on a balancing of harms in the particular "circumstances."  *Dellinger v. Bessent*, 2025 WL 887518, at *4 (D.C. Cir. Mar. 10, 2025).  The case ultimately became moot.  *Dellinger v. Bessent*, 2025 WL 935211 (D.C. Cir. Mar. 27, 2025).

PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION                                              -20-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

Both types of harm are present here. Because of Defendants' actions, Rogoff has "lost the ability to fulfill a high-ranking, public-servant role" to which the Court appointed him. *Cook*, 804 F. Supp. 3d at 43 (citation omitted). In his court-appointed role, Rogoff is charged with all the duties of the U.S. Attorney, including prosecuting "all offenses against the United States" and prosecuting or defending "all civil actions" for the federal government. 28 U.S.C. § 547. The deprivation of Rogoff's right to perform these duties "itself constitutes irreparable harm." *Cook*, 804 F. Supp. 3d at 40. Moreover, Rogoff's removal would leave the U.S. Attorney's Office with no lawfully appointed head, jeopardizing the functioning of the office. *Infra* Section IV.C.2.

## C.    The Equities and the Public Interest Strongly Favor an Injunction

The remaining factors also favor a preliminary injunction. To begin, a party's likelihood of success on the merits is a strong indicator that a preliminary injunction "would serve the public interest" because "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (recognizing a "substantial public interest 'in having governmental agencies abide by the federal laws that govern [its] existence and operations'" (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994))). And the injunction would further the public interest in other important ways.

### 1.    The Public Has an Interest in Preserving the Separation of Powers

Rogoff's wrongful removal harms the separation of powers. That constitutional harm directly endangers the public interest. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("[P]ublic interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

*First*, "[t]he public interest requires not only that Court orders be obeyed but further that Governmental agencies which are charged with the enforcement of laws should set the example of compliance with Court orders." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1370 (9th Cir. 1980) (citation omitted). Rogoff's removal improperly nullifies the Court's

PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
Case No. 2:26-cv-02566    -21-

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

appointment order, which authorizes him to serve until the Senate confirms a replacement. Rogoff Decl. Ex. 3.

*Second*, the Constitution permits Congress to prescribe the appointment of U.S. Attorneys and to limit their removal.  Congress exercised that prerogative through § 546, yet Defendants purported to remove Rogoff in violation of that statute.  Allowing the Executive to fire Rogoff at will—and thereby leaving a *de facto* U.S. Attorney to serve indefinitely without *ever* seeking Senate confirmation—would undo the careful balancing Congress wrote into § 546, eviscerate the purpose of the statute, and write the Senate out of the U.S. Attorney appointment process entirely.  The harm to separation of powers is real and ongoing.

**2.      The Public Has an Interest in the Administration of Justice**

Rogoff's improper removal leaves this district with no lawfully appointed U.S. Attorney. The public has an interest "in ensuring that those purporting to wield the powers of a U.S. Attorney lawfully possess those powers." *In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.*, 2026 WL 686046, at *5 (N.D.N.Y. Mar. 11, 2026).  Leaving the office with no lawful head endangers the fair and orderly administration of justice.

This public harm is not hypothetical, as experiences in other districts make plain.  *Supra* Section II.D.  Likewise, here, leaving the U.S. Attorney's Office without a lawfully appointed U.S. Attorney jeopardizes all of the office's work—the justice it seeks on behalf of the United States for the people of this district.  To be sure, the office continues to investigate and prosecute federal offenses and to carry on the work of federal law enforcement.  But an unlawfully serving office head is subject to disqualification, as courts across the country have held—creating uncertainty as to the validity of any actions overseen by that individual.  *See supra* p. 8.  Even the line attorneys "acting under the supervision" of an unlawful *de facto* U.S. Attorney are "subject to disqualification," and pending criminal cases subject to dismissal.  *Naviwala*, 825 F. Supp. 3d at 465, 531.  Even if challenges to the office's actions are unsuccessful, defending against them poses a tremendous and unnecessary burden on the vital work of the office to enforce federal laws.  This state of affairs undermines the public's trust in the office.

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                                    -22-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

**3.  Defendants Will Not Suffer Harm if Rogoff Is Granted Injunctive Relief**

On the other side of this balance, the requested relief will not cause Defendants any hardship.  The government cannot suffer harm from an injunction that ends an unlawful practice. *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) ("The government . . . 'cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.'" (citation omitted)); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (holding that the government "cannot suffer harm from an injunction that merely ends an unlawful practice" implicating "constitutional concerns").  The relief requested here, moreover, would leave the President free to lawfully remove Rogoff from office by filling the vacancy with Senate advice and consent.  *Cf. Grand Jury Subpoenas*, 2026 WL 686046, at *5 (denying stay of motion to quash subpoenas where "[t]he Federal Government is free to continue investigating through lawful channels").

**V. CONCLUSION**

Plaintiff's motion should be granted.

**Certification of Word Count**

I certify that this memorandum contains 8,313 words, in compliance with the Local Civil Rules.

DATED this 21st day of July, 2026

HKM EMPLOYMENT ATTORNEYS LLP

*/s/ Jason A. Rittereiser*
Jason A. Rittereiser, WSBA No. 43628
*/s/ Daniel Kalish*
Daniel Kalish, WSBA No. 35815
600 Stewart Street, Suite 901
Seattle, Washington 98101
Telephone: (206) 838-2504
jrittereiser@hkm.com
dkalish@hkm.com

*Attorneys for Plaintiff Roger Rogoff*

PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION       -23-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

MUNGER, TOLLES & OLSON LLP

Hailyn J. Chen, CA Bar No. 237436
(*pro hac vice pending*)
Victoria A. Degtyareva, CA Bar No. 284199
(*pro hac vice pending*)
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
hailyn.chen@mto.com
victoria.degtyareva@mto.com

Donald B. Verrilli, Jr., D.C. Bar No. 420434
(p*ro hac vice pending*)
Cynthia Long, D.C. Bar No. 90018011
(*pro hac vice pending*)
601 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 220-1100
donald.verrilli@mto.com
cynthia.long@mto.com

Shannon Aminirad, CA Bar No. 324780
(*pro hac vice pending*)
Connor Hoge, CA Bar No. 349884
(*pro hac vice pending*)
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000
shannon.aminirad@mto.com
connor.hoge@mto.com

*Attorneys for Plaintiff Roger Rogoff*

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                                          -24-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of July, 2026, I filed the foregoing document with the clerk of the Court for the United States District Court for the Western District of Washington using the CM/ECF system.

I further certify that a copy of the foregoing will be hand delivered as follows:

UNITED STATES ATTORNEY'S OFFICE
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271

I further certify that a copy of the foregoing will be deposited with the United States Postal Service, for delivery to the below Defendants, the Acting Attorney General of the United States, and to the Department of Justice by Certified Mail:

DONALD J. TRUMP, in his official capacity as President of the United States
1600 Pennsylvania Avenue NW
Washington, DC 20500

EXECUTIVE OFFICE OF THE PRESIDENT
1600 Pennsylvania Avenue NW
Washington, DC 20500

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States
950 Pennsylvania Avenue NW, Washington, DC 20530

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW, Washington, DC 20530

UNITED STATES ATTORNEY'S OFFICE
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271

DATED this 21st day of July, 2026.


_____
*/s/ Taylor Yates*
Taylor Yates, Practice Group Manager
HKM Employment Attorneys LLP

PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION                                    -25-
Case No. 2:26-cv-02566

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100