The Honorable Stanley A. Bastian

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| ROGER ROGOFF,<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | No. 2:26-cv-02566<br><br>**BRIEF OF *AMICUS CURIAE* THE NEW CIVIL LIBERTIES ALLIANCE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |



MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 787101
Tel.: (512) 686-3940

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii
INTRODUCTION ........ 1
ARGUMENT ........ 1
I. THE APPOINTMENTS CLAUSE FORBIDS COURT APPOINTMENT OF U.S. ATTORNEYS ........ 1
A. As a Principal Officer, Rogoff Could Be Appointed Only by the President with the Advice and Consent of the Senate ........ 1
B. The District Court's Appointment of Rogoff Would Violate the Appointments Clause Even if He Were an Inferior Officer ........ 5
II. THE DISTRICT COURT'S APPOINTMENT OF ROGOFF VIOLATES THE SEPARATION OF POWERS ........ 7
CONCLUSION ........ 9
CERTIFICATE OF SERVICE ........ 10

## TABLE OF AUTHORITIES

**Cases**

*Edmond v. United States*,
520 U.S. 651 (1997) ..... 2, 3
*Ex parte Siebold*,
100 U.S. 371 (1879) ..... 7
*In re Application of President's Comm'n on Organized Crime*,
763 F.2d 1191 (11th Cir. 1985) ..... 7
*Kennedy v. Braidwood Management, Inc.*,
606 U.S. 748 (2025) ..... 2, 3
*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (9th Cir. 2016) ..... 1
*Mistretta v. United States*,
488 U.S. 361 (1989) ..... 8
*Morrison v. Olson*,
487 U.S. 654 (1988) ..... 7
*Sierra Club v. Trump*,
929 F.3d 670 (9th Cir. 2019) ..... 1
*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021) ..... 2, 3
*United States v. Gantt*,
194 F.3d 987 (9th Cir. 1999) ..... 2

**Statutes**

28 U.S.C. § 518(b) ..... 3
28 U.S.C. § 519 ..... 3
28 U.S.C. § 541(c) ..... 3
28 U.S.C. § 545(b) ..... 3
28 U.S.C. § 546(d) ..... 8
28 U.S.C. § 550 ..... 3

**Constitutional Provisions**

U.S. Const. art. II, § 2, cl. 2 ..... 1



**MITCHELL LAW PLLC**
111 Congress Avenue, Suite 400
Austin, Texas 787101
Tel.: (512) 686-3940

**Other Authorities**


Akhil Reed Amar,
*Intratextualism*,
112 Harv. L. Rev. 747 (1999) ........ 5, 6

Leslie B. Arffa,
Note, *Separation of Prosecutors*,
128 Yale L.J. 1078 (2019) ........ 4

Rachel E. Barkow,
*Clemency and Presidential Administration of Criminal Law*,
90 N.Y.U. L. Rev. 802 (2015) ........ 4

Richard S. Frase,
*The Decision to File Federal Criminal Charges: A Quantitative Study of Prosecutorial Discretion*,
47 U. Chi. L. Rev. 246 (1980) ........ 4

Richard Samp,
*Good-bye,* Morrison v. Olson,
Law & Liberty (Sept. 7, 2021) ........ 5

Ross E. Weiner,
*Inter-Branch Appointments After the Independent Counsel: Court Appointment of United States Attorneys*,
86 Minn. L. Rev. 363 (2001) ........ 4, 7, 8





**MITCHELL LAW PLLC**
111 Congress Avenue, Suite 400
Austin, Texas 787101
Tel.: (512) 686-3940

## INTRODUCTION

This Court should deny Plaintiff Roger Rogoff's motion for preliminary injunction because, as Defendants correctly argue, the President's Article II authority allows him to terminate court-appointed U.S. Attorneys at will. To hold otherwise would present a grave threat to the Separation of Powers, as the President would be forced to share significant executive power with a U.S. Attorney outside his ability to terminate, and thus outside his ability to control.

Moreover, if the Court decides that the President cannot terminate court-appointed U.S. Attorneys at will, it will have to address a separate constitutional question: whether the Constitution allows courts to appoint U.S. Attorneys at all. And the answer to that question is no: both the Appointments Clause and the Separation of Powers prohibit courts from appointing U.S. Attorneys. For that reason, Plaintiff's claims should fail on the merits, regardless of whether the President had statutory or constitutional authority to terminate him, because Plaintiff has never legitimately held the office of U.S. Attorney. And the balance of equities and public interest do not favor a preliminary injunction because "[t]here is generally no public interest in the perpetuation of unlawful [federal government] action," *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (9th Cir. 2016), and "[t]he public interest in ensuring protection of [the] separation of powers is foundational," *Sierra Club v. Trump*, 929 F.3d 670, 707 (9th Cir. 2019).

## ARGUMENT

### I. THE APPOINTMENTS CLAUSE FORBIDS COURT APPOINTMENT OF U.S. ATTORNEYS

District-court appointment of U.S. Attorneys violates the Constitution's requirements for appointing principal or inferior officers of the United States.

#### A. As a Principal Officer, Rogoff Could Be Appointed Only by the President with the Advice and Consent of the Senate

Article II, Section 2, Clause 2 of the U.S. Constitution gives the President the power to


**MITCHELL LAW PLLC**
111 Congress Avenue, Suite 400
Austin, Texas 787101
Tel.: (512) 686-3940

> nominate, and by and with the Advice and Consent of the Senate, … appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

Because U.S. Attorneys are not "inferior" officers—*i.e.*, because they are what the Supreme Court has called "principal" officers—they may be appointed only by the President with the advice and consent of the Senate.[1]

The Supreme Court addressed the principal/inferior officer distinction in *Edmond v. United States*:

> Generally speaking, the term "inferior officer" connotes a relationship with some higher ranking officer or officers below the President: Whether one is an "inferior" officer depends on whether he has a superior. It is not enough that other officers may be identified who formally maintain a higher rank, or possess responsibilities of a greater magnitude … . Rather, in the context of a Clause designed to preserve political accountability relative to important Government assignments, … 'inferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate.

520 U.S. 651, 662–63 (1997). Applying that understanding, the Court held that Coast Guard Court of Criminal Appeals judges were inferior officers because the Judge Advocate General "may … remove a [Criminal Appeals] judge from his judicial assignment without cause"—a power the

[1] *Amicus* acknowledges that the Ninth Circuit rejected this view in *United States v. Gantt*, 194 F.3d 987, 999–1000 (9th Cir. 1999), but raises the issue to encourage its reconsideration in light of *United States v. Arthrex*, 594 U.S. 1 (2021), and *Kennedy v. Braidwood Management, Inc.*, 606 U.S. 748 (2025).

Court called "a powerful tool for control"—and because their decisions were subject to review by the Court of Appeals for the Armed Forces. *Id.* at 664–65.

The Court applied the same standard in *United States v. Arthrex, Inc.*, holding that Administrative Patent Judges were principal officers because they could "render a final decision on behalf of the United States without any … review by their nominal superior or any other principal officer in the Executive Branch." 594 U.S. 1, 14 (2021) (cleaned up). And in *Kennedy v. Braidwood Management, Inc.*, the Court held that members of the U.S. Preventive Services Task Force were inferior officers because the Secretary of Health and Human Services could remove them at will and could "directly review and block Task Force recommendations before they take effect." 606 U.S. 748, 762–765 (2025). These decisions establish that an officer is "inferior" if another officer appointed by the President with the advice and consent of the Senate may (1) remove them at will and (2) block the officer's decisions before they take effect.

Under that standard, U.S. Attorneys are principal officers. Only the President may terminate a U.S. Attorney. *See* 28 U.S.C. § 541(c). And a U.S. Attorney's work is not sufficiently "directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate," *Edmond*, 520 U.S. at 663, to render the U.S. Attorney an inferior officer. The Attorney General cannot remove a U.S. Attorney, which the Supreme Court has recognized as the key means of compelling obedience. *See Kennedy*, 606 U.S. at 764. True, the Attorney General may "supervise" litigation and "direct" U.S. Attorneys "in the discharge of their respective duties," 28 U.S.C. § 519; may take over a case or direct the Solicitor General or another officer of the Department of Justice to do so, *id.* § 518(b); and may set U.S. Attorneys' official stations and approve their staffing, *id.* §§ 545(b), 550. But any supervision is necessarily limited—and, for most of a U.S. Attorney's work, impossible. "In most cases, … the U.S. Attorney

has complete control over which charges, if any, will be filed in his district." Richard S. Frase, *The Decision to File Federal Criminal Charges: A Quantitative Study of Prosecutorial Discretion*, 47 U. Chi. L. Rev. 246, 250 (1980). "U.S. Attorneys do not seek approval to initiate investigations, file indictments, enter plea bargains, or prosecute cases at trial, nor is any such approval required." Ross E. Weiner, *Inter-Branch Appointments After the Independent Counsel: Court Appointment of United States Attorneys*, 86 Minn. L. Rev. 363, 420–21 (2001). Nor *could* the Attorney General supervise them: with "a docket of almost 70,000 cases every year," it is "simply not possible … to police how each U.S. Attorney proceeds." Rachel E. Barkow, *Clemency and Presidential Administration of Criminal Law*, 90 N.Y.U. L. Rev. 802, 853–54 (2015). Thus, "[i]n many instances, Main Justice is not even aware of criminal prosecutions" and is "only likely to become aware of and involved in a case when there is a problem or negative publicity." Weiner, *supra*, at 421.

"[E]ven when the Attorney General attempts to exercise her supervisory authority, U.S. Attorneys sometimes balk. As Professor Charles Ruff put it, directives emanating from Main Justice are 'most often honored in the breach.'" *Id.* (quoting Charles F.C. Ruff, *Federal Prosecution of Local Corruption: A Case Study in the Making of Law Enforcement Policy*, 65 Geo. L.J. 1171, 1207–08 (1977)); *see also* Leslie B. Arffa, Note, *Separation of Prosecutors*, 128 Yale L.J. 1078, 1103 (2019) (noting that the Department of Justice issues a "Justice Manual" and guidance memoranda to direct U.S. Attorneys, but "U.S. Attorneys and Assistant U.S. Attorneys have historically expressed varying levels of compliance with them" and sometimes never read them at all); *id.* at 1107–08 (noting that some U.S. Attorneys "refused to follow former Attorney General Sessions's memorandum directing more sustained enforcement of statutes criminalizing marijuana possession and distribution").



**MITCHELL LAW PLLC**
111 Congress Avenue, Suite 400
Austin, Texas 787101
Tel.: (512) 686-3940

Because U.S. Attorneys bear the hallmarks of a principal officer, they may only be appointed through presidential nomination and Senate confirmation, not through selection by a court.

**B. The District Court's Appointment of Rogoff Would Violate the Appointments Clause Even if He Were an Inferior Officer**

Even if U.S. Attorneys were "inferior" officers, their court appointment would still violate the Appointments Clause, which does not authorize such cross-branch appointments.[2]

The Clause states that Congress may "vest the Appointment of such inferior Officers … in the President alone, in the Courts of Law, or in the Heads of Departments"—which could be read to allow courts to appoint Executive Branch officers (and Department heads to appoint court personnel). But that is not the best reading. As Professor Akhil Amar has explained:

> When Congress chooses to allow unilateral appointment of an "inferior" officer, without the special check and safeguard of Senate confirmation, it must vest the power to appoint the "inferior" in his or her superior. The superior appointing authority must have broad power to direct or to countermand the decisions of the subordinate. Thus, a court of law may be vested with power to appoint its law clerks, magistrates, bailiffs, masters, and the like, but not prosecutors or diplomats or colonels whom it does not (and cannot in the nature of things) oversee and whose decisions it cannot overturn. The head of the State Department may appoint an assistant within her department, but not an assistant within the Justice Department, or within the judiciary.

Akhil Reed Amar, *Intratextualism*, 112 Harv. L. Rev. 747, 805–06 (1999).

Amar reaches this conclusion by consulting "ordinary dictionaries and … the Constitution as its own dictionary": because "'inferior' often means 'subordinate,'" and the Constitution's other

---

[2] *Amicus* acknowledges that the Supreme Court rejected this view in *Morrison v. Olson*, 487 U.S. 654, 673–75 (1988), but raises the issue to encourage its reconsideration. *See also* Richard Samp, *Good-bye,* Morrison v. Olson, Law & Liberty (Sept. 7, 2021), https://lawliberty.org/good-bye-morrison-v-olson/ (arguing that *Arthrex* "*sub silentio* overruled *Morrison*").

uses of "inferior" (*e.g.*, "inferior courts") likewise mean inferior to a particular superior, "the Article II Appointments Clause['s] … 'inferior' officers … likewise means 'inferior to' their superior—the relevant unilateral appointing authority." *Id.* at 806–07.

Moreover, there is no reason to believe that the Framers sought to authorize cross-branch appointments. "The language permitting unilateral appointment of inferior officers emerged on the last day of the Philadelphia Convention, and with little debate—facts suggesting that it was viewed as a minor housekeeping measure." *Id.* at 808. "[A]uthorizing judges to appoint prosecutors—or diplomats or colonels, for that matter—seems a far bigger deal," for which "we would expect to find considerably more discussion." *Id.*

Consistent with this reading, early federal statutes authorized officers to appoint *their own* inferiors. *Id.* at 808. Joseph Story took the same view:

> The courts of the Union possess the narrow prerogative of appointing their own clerk, and reporter … . The heads of department are, in like manner, generally entitled to the appointment of the clerks in their respective offices. … [And] the postmaster general … is invested with the sole and exclusive authority to appoint, and remove all deputy post-masters….

*Id.* (quoting 3 Joseph Story, Commentaries on the Constitution of the United States § 1530, at 387 (1833)). An early Supreme Court decision also reflects this view:

> The appointing power here designated … was no doubt intended to be exercised by the department of the government to which the officer to be appointed most appropriately belonged. The appointment of clerks of Courts properly belongs to the Courts of law; and that a clerk is one of the inferior officers contemplated by this provision in the Constitution cannot be questioned.

*Id.* at 808–09 (quoting *Ex parte Hennen*, 38 U.S. 230, 257–58 (1839)).

Thus, whether Rogoff is considered a principal or an inferior officer, the Constitution did not permit Congress to place the power to appoint him in a court.

## II. THE DISTRICT COURT'S APPOINTMENT OF ROGOFF VIOLATES THE SEPARATION OF POWERS

In addition, Rogoff's appointment violates the Separation of Powers.

The Supreme Court has acknowledged that, regardless of whether the Appointments Clause forbids them, cross-branch appointments have "the potential to impair the constitutional functions assigned to one of the branches." *Morrison v. Olson*, 487 U.S. 654, 675–76 (1988). *Morrison* also acknowledged that the Court had, in *Ex Parte Siebold*, 100 U.S. 371 (1879), "suggested that Congress' decision to vest the appointment power in the courts would be improper if there was some 'incongruity' between the functions normally performed by the courts and the performance of the duty to appoint." *Id.* at 676 (quoting *Siebold*, 100 U.S at 398)). According to *Siebold*, there is no "incongruity" when "the appointment of the officers in question could [not], with any greater propriety, and … with equal regard to convenience, have been assigned to any other depositary of official power capable of exercising it." *Siebold*, 100 U.S. at 398; *see also In re Application of President's Comm'n on Organized Crime*, 763 F.2d 1191, 1196–97 (11th Cir. 1985) (framing the question as "[D]oes the imposition of powers traditionally associated with one branch of government on officials of another branch interfere with their ability to perform their constitutionally-required duties in the branch of which they are a part?").

But court appointment of U.S. Attorneys *is* incongruous because it draws courts into inherently political decisions about prosecutorial priorities and undermines the appearance of judicial impartiality. The public will perceive that a judge is more likely to credit a court-selected attorney, and a criminal defendant may well wonder whether a judge will unduly credit a prosecutor whom that judge had a hand in appointing. "Judges who become too closely aligned with the interests of another branch cannot be expected to maintain their impartiality … and the public at large may lose faith in the judiciary's independence." *Weiner*, *supra*, at 426 (quoting

Harold J. Krent, *Separating the Strands in Separation of Powers Controversies*, 74 Va. L. Rev. 1253, 1302 n.204 (1988)). This concern is "particularly acute in the court appointment of a U.S. Attorney because 'the greater the policy-making power of the appointee … the more incongruous and improper it is for Congress to vest the appointment of that official in a court.'" *Id.* at 428–29 (quoting Constance O'Keefe & Peter Saferstein, Note, *Fallen Angels, Separation of Powers, and the Saturday Night Massacre*, 49 Brook. L. Rev. 113, 133 (1982)).

*Mistretta v. United States*, 488 U.S. 361 (1989), upheld placing the U.S. Sentencing Commission within the Judicial Branch, stating that "Congress may delegate to the Judicial Branch nonadjudicatory functions that do not trench upon the prerogatives of another Branch and that are appropriate to the central mission of the Judiciary." *Id.* at 388. The Court reasoned that the Commission's powers were "not united with the powers of the Judiciary" because they were not "vested in a court" and the Commission did not "exercise judicial power"; that the Commission was "an independent agency in every relevant sense" and "fully accountable to Congress," which could revoke or amend its Guidelines; that its members were "subject to the President's limited powers of removal"; and that its rulemaking was "subject to the notice and comment requirements of the Administrative Procedure Act." *Id.* at 393–94.

The factors that permitted placing the Sentencing Commission in the Judicial Branch cut the other way here. The power to appoint U.S. Attorneys is vested in *the courts*, not an "independent agency" or individual judges, 28 U.S.C. § 546(d), so a power of the Executive Branch *is* "united with the powers of the Judiciary." That placement also *increases* the Judiciary's power because courts could not appoint prosecutors absent the statute. And it risks "undermin[ing] public confidence in the disinterestedness of the Judicial Branch." Unlike the Commission's work

then, appointing a prosecutor does not "rationalize" a process that courts already perform; instead, it transfers a consequential decision belonging to the other branches.

The district court's appointing Mr. Rogoff therefore violated the Separation of Powers.[3]

## CONCLUSION

The Court should deny Plaintiff's motion for a preliminary injunction.

DATED: August 17, 2026

Respectfully submitted,

/s/*Jonathan F. Mitchell*_____
JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, TX 78701
Tel.: (512) 686-3940
jonathan@mitchell.law

*Attorney for* Amicus Curiae
*The New Civil Liberties Alliance*

*I certify that this brief contains 2,689 words, in compliance with the Local Civil Rules.*

---

[3] *Gantt* rejected an "incongruity" argument against court appointment of U.S. Attorneys, but it did not expressly address the Separation of Powers and appeared to consider it solely as an Appointments Clause issue. 194 F.3d at 1000.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2026, I electronically filed the foregoing Brief of *Amicus Curiae* in Opposition to Plaintiff's Motion for Preliminary Injunction using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

DATED: August 17, 2026

/s/*Jonathan F. Mitchell*_____
JONATHAN F. MITCHELL