THE HONORABLE STANLEY A. BASTIAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROGER ROGOFF,

Plaintiff,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

Defendants.

Case No. 2:26-CV-02566-SAB

**BRIEF OF FORMER UNITED STATES ATTORNEYS AS AMICI CURIAE SUPPORTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## INTRODUCTION

Exercising its Appointments Clause authority, Congress has prescribed three paths to the inferior office of United States Attorney. Ordinarily, the President nominates a candidate subject to the Senate's advice and consent. The Attorney General also may make an interim appointment for up to 120 days. If that temporary appointment expires, the district court may appoint a United States Attorney to serve until the vacancy is filled. The Appointments Clause expressly permits that judicial role: Under Article II, Congress may vest the appointment of inferior officers in the Courts of Law.

The Executive now seeks to evade that framework. By the government's telling, the President may refuse to nominate anyone, fire any court-appointed United States Attorney—like Plaintiff Roger Rogoff—and leave the office vacant indefinitely without a statutorily appointed leader. The Department of Justice reports that about a dozen "first assistants"—none "Presidentially [A]ppointed," "Attorney General Appointed," or "Court Appointed"—presently function as United States Attorneys.[1] That scheme has allowed the President to sidestep the Senate's advice-and-consent role and sideline the Judiciary, contrary to Congress's explicit design.

Congress *has tried and rejected* the government's proposed regime. In 2006, Congress eliminated the courts' role and the 120-day limit on the Attorney General's interim appointments. But Congress restored both provisions just a year later after concluding that the experiment had invited an abuse of power that threatened the professionalism of United States Attorneys' offices nationwide. The government now seeks to achieve by executive fiat what Congress withdrew by statute.

Amici—a bipartisan group of former United States Attorneys—know the real-world costs of adopting the government's approach. A United States Attorney's office depends on the settled authority of its leader to convene grand juries, seek wiretaps, approve charges, and authorize

---

[1] *See U.S. Attorneys Listing*, U.S. Dep't of Just. (Aug. 17, 2026), https://www.justice.gov/usao/us-attorneys-listing.



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

investigations that may last for years. When an official installed outside Congress's prescribed process assumes that role, these core functions become vulnerable to collateral attack. Even worse, career prosecutors bear the professional risk of decisions made under contested authority, while the public faces prosecutions brought in the name of the United States by an official whose appointment circumvents the Constitution. Because Congress legislated to prevent those very outcomes, the Court should grant Plaintiff's motion for a preliminary injunction.

## INTEREST OF AMICI CURIAE

Amici are thirty former United States Attorneys who served across several decades in judicial districts throughout the Nation.[2] They were nominated by Presidents of both parties and confirmed by Senates of differing composition. Several Amici served in interim or court-appointed capacities. What unites them is not a political view but a shared institutional interest: The office of United States Attorney belongs to and serves the public, and its authority depends on the lawfulness of the appointment that confers it.

Amici's experiences bear directly on this case. They have convened grand juries, approved indictments, and signed applications that only a United States Attorney may submit. They have also recruited and supervised career prosecutors, allocated scarce resources across multiyear investigations, and answered to the district courts they served. Amici are uniquely positioned to explain why their lawful appointments mattered. Among other things, proper appointments bolster the public's confidence in the charges brought in its name and assure line prosecutors of the authority under which they act.

Amici take no position on the merits of any investigation or prosecution in this district and express no view on the qualifications of any individual to serve as United States Attorney. Their concern is with the integrity of the processes that the Constitution and Congress prescribed.

---

[2] A list of Amici is included in the Appendix. No counsel for any party authored this brief in whole or in part, and no entity or person, aside from Amici or their counsel, contributed money to fund the preparation or submission of this brief.



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## ARGUMENT

### I. Congress Exercised Its Broad Appointments Clause Power To Prescribe Three Pathways For Appointing United States Attorneys.

The Appointments Clause commits to Congress "substantial discretion" to choose how inferior officers are appointed. *Silver* v. *USPS*, 951 F.2d 1033, 1037 (9th Cir. 1991). The default rule requires presidential nomination and Senate confirmation. U.S. Const. art. II, § 2, cl. 2; *Edmond* v. *United States*, 520 U.S. 651, 660 (1997). "[B]ut the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. Courts therefore respect "Congress' choice of which constitutional appointment process works best." *United States* v. *Arthrex, Inc.*, 594 U.S. 1, 47-48 (2021) (Thomas, J., dissenting) (collecting authorities).

Because United States Attorneys are "inferior officers," *United States* v. *Jackson*, No. 25-6214, slip op. at 11 (9th Cir. Aug. 17, 2026), Congress created three pathways for appointments to that office.

*First*, Congress made presidential nomination and Senate confirmation the default path: "The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district." 28 U.S.C. § 541(a).

*Second*, Congress gave the Attorney General interim appointment power when "the office of United States attorney is vacant." 28 U.S.C. § 546(a). But Congress expressly limited that power: The Attorney General's appointee "may serve until the earlier of" the "qualification of a United States attorney for such district appointed by the President under section 541" or "the expiration of *120 days* after appointment by the Attorney General." *Id.* § 546(c) (emphasis added). "The statute does not contemplate a role for the President or the Attorney General after the expiration of the 120-day appointment" because that time limit "reflects a balance" that "ensures that the Senate retains its role in the appointment process despite the occasional designation of temporary officers." *Jackson*, slip op. at 12-14. For similar reasons, Congress barred the



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Attorney General from appointing "a person to whose appointment by the President to that office the Senate refused to give advice and consent." 28 U.S.C. § 546(b).

*Third*, if the Attorney General's appointment under Section 546(a) "expires," then "the district court for such district may appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. § 546(d). A vacancy is "filled" only by presidential appointment with the Senate's advice and consent. *Id.* § 541(a); *see Jackson*, slip op. at 12-14.

Those pathways produce appointments that differ not just by selection method but also in duration. Only Senate-confirmed presidential appointments and district-court appointments permit service without a fixed expiration date: A Senate-confirmed appointee serves a four-year term and "shall continue to perform the duties of his office until his successor is appointed and qualifies," 28 U.S.C. § 541(b), while a judicial appointee "serve[s] until the vacancy is filled," *id.* § 546(d). The Attorney General's appointee, in contrast, "may serve" no longer than 120 days. *Id.* § 546(c).

Congress's framework accords with historical practice and judicial precedent. The Judiciary's authority to appoint United States Attorneys for service until a successor's confirmation dates to the Civil War era. *See* Act of Mar. 3, 1863, ch. 93, § 2, 12 Stat. 768, 768. Indeed, "[b]etween 1863 and 1985, *only* the federal courts could appoint an interim U.S. Attorney." *Jackson*, slip op. at 12-13 (emphasis added). And the Supreme Court has repeatedly recognized that Congress may prescribe the manner of an inferior officer's appointment and constrain the manner of removal so long as the Executive retains sufficient control over the officer's exercise of executive power. *See, e.g.*, *Kennedy* v. *Braidwood Mgmt.*, 606 U.S. 748, 765-769 (2025); *Arthrex*, 594 U.S. at 26-27; *Seila Law LLC* v. *CFPB*, 591 U.S. 197, 217-218 (2020).

For those reasons, the government errs by focusing on the President's removal power. The Executive retains ample control over United States Attorneys regardless of how they are appointed. The Attorney General—who is removable at will—directs the litigation of the United States and may reassign or personally assume control of any United States Attorney's cases. 28 U.S.C. §§ 516, 518(b), 519. Although United States Attorneys have "plenary authority with regard to



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

federal criminal matters" "within" their district, "[t]his authority is exercised under the supervision of the Attorney General and his/her delegates," who set the government's overarching litigation priorities. United States Dep't of Justice, *Justice Manual* § 9-2.001. And the Solicitor General, who is likewise "[s]ubject to the general supervision and direction of the Attorney General," *id.* § 2-1.000, must personally authorize any appeals "taken by the Government," 28 C.F.R. § 0.20(b).

Contrary to the government's suggestion, *Trump* v. *Slaughter*, 146 S. Ct. 2283 (2026), does not alter the analysis. Nor does it permit the President to sidestep the Judiciary's proper role by reflexively firing any court-appointed United States Attorney without adhering to the statute. *Slaughter* addressed a for-cause removal restriction shielding a principal officer of a multimember agency. The Supreme Court "ha[d] no occasion" to "determine the fate of" other officials, *id.* at 2305-2306, including inferior officers appointed under Section 546(d). Unlike the restrictions at issue in *Slaughter*, Section 546(d) leaves the President free to end a court appointee's service at any time. He need only nominate a successor whom the Senate confirms. The problem here arises from the President's decision not to nominate anyone.

## II. Congress's Appointment Framework Reflects Its Considered Judgment That United States Attorneys' Offices Require Accountability, Legitimacy, And Stability.

Lawful appointment matters because a United States Attorney exercises considerable prosecutorial discretion with little day-to-day judicial review. Under the supervision of the Attorney General and Solicitor General, United States Attorneys have "broad discretion" to enforce the Nation's criminal laws. *Wayte* v. *United States*, 470 U.S. 598, 607 (1985). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher* v. *Hayes*, 434 U.S. 357, 364 (1978). Judges generally do not review those judgments in the ordinary course. Federal prosecutors make investigative, charging, and plea-bargaining decisions largely "outside the supervision of the court." *Young* v. *United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987). Courts instead apply a "pre-



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

sumption of regularity": "[I]n the absence of clear evidence to the contrary," prosecutors "have properly discharged their official duties." *United States* v. *Chemical Found., Inc.*, 272 U.S. 1, 14-15 (1926). That presumption attaches to the *office*, not the individual, because it presupposes that the occupant holds the role lawfully.

A federal prosecutor's exercise of discretion carries life-changing consequences before a court even reviews the case. "Only someone who has worked in the field of law enforcement can fully appreciate the vast power and the immense discretion that are placed in the hands of a prosecutor with respect to the objects of his investigation." *Morrison* v. *Olson*, 487 U.S. 654, 727 (1988) (Scalia, J., dissenting) (citing Robert H. Jackson, *The Federal Prosecutor, Address at the Second Annual Conference of United States Attorneys* (Apr. 1, 1940)). "'With the law books filled with a great assortment of crimes, a prosecutor stands a fair chance of finding at least a technical violation of some act on the part of almost anyone,'" and the greatest danger of abuse lies in picking the person first and the offense second. *Id.* at 728 (quoting Jackson). Nor can those errors be repaired after the fact: A decision to seek an indictment carries consequences that "a later dismissal or acquittal can never undo." *United States* v. *Williams*, 504 U.S. 36, 63 (1992) (Stevens, J., dissenting) (citation omitted).

Because the office bears directly on liberty, a United States Attorney owes heightened ethical obligations. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger* v. *United States*, 295 U.S. 78, 88 (1935). The United States Attorney "may strike hard blows," but "he is not at liberty to strike foul ones." *Id.* That obligation animates the constitutional duty of disclosure, *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963), and explains why the Supreme Court requires federal prosecutions to proceed in a "rigorously disinterested fashion, for liberty itself may be at stake in such matters," *Young*, 481 U.S. at 810-811. In short, United States Attorneys must cut square corners.



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Sections 541 and 546 advance those profound institutional interests, and Congress enacted these provisions to preserve accountability, legitimacy, and stability within each United States Attorney's office.

Section 541 supplies accountability and legitimacy by assigning primary responsibility for the appointment to the President and Senate. Senate confirmation "curb[s] Executive abuses of the appointment power," "promote[s] a judicious choice," and "ensure[s] public accountability for both the making of a bad appointment and the rejection of a good one." *Edmond*, 520 U.S. at 659-660; *see Freytag* v. *Commissioner*, 501 U.S. 868, 884 (1991) (recognizing the Senate's role in "ensur[ing] that those who wield[]" appointment authority "[a]re accountable to political force and the will of the people").

Section 546(d) establishes comparable accountability and legitimacy through a public, cross-branch review involving the Judiciary. The appointing court's order must be publicly "filed with the clerk of the court," 28 U.S.C. § 546(d); numerous courts have publicly announced the vacancy and solicited applications;[3] and, in this case, the court convened a merit-selection panel to evaluate candidates before appointing one, *see* Dkt. 12-2. As the branch of government independently charged with adjudicating federal prosecutions, the Judiciary is well positioned to identify a United States Attorney capable of discharging the office's responsibilities. Congress's judgment that a "Court[] of Law" is a "proper" repository of this appointment power is thus entirely reasonable and expressly authorized by Article II. U.S. Const. art. II, § 2, cl. 2.

Section 546(d) also preserves stability during a vacancy. It permits a court-appointed United States Attorney to serve "until the vacancy is filled" rather than for a fixed term that expires on a set date. That structure ensures continuity pending actual nomination and confirmation of a

[3] *See, e.g.*, *Vacancy Announcement: Interim Court-Appointed United States Attorney Pursuant to 28 U.S.C. § 546(d)* (E.D. Va. Jan. 20, 2026), https://tinyurl.com/edvapost; *Notice Seeking Applications For Appointment of Interim United States Attorney Pursuant to 28 U.S.C. § 546(d)* (D.R.I. Apr. 2, 2026), https://tinyurl.com/dripost.



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

candidate to fill the position on a more permanent basis. Indeed, a court-appointed United States Attorney serves only until the Executive acts to properly fill the position.

## III. Prolonged Provisional Leadership Untethered From Any Lawful Confirmation Or Appointment Process Defeats Congress's Structural Design And Threatens The Validity Of The Office's Work.

In Amici's collective experience, unsettled leadership degrades the quality and integrity of investigations and charging decisions in a United States Attorney's office. Long-term investigations require leaders who can make and defend decisions whose results may be years away. Properly appointed leaders provide the sustained institutional guidance and backing required to pursue critical, complex cases targeting public corruption, organized fraud, and transnational trafficking. That durability also helps the office negotiate pressure from Congress, federal agencies, or local governments. By contrast, a leader appointed contrary to the statute may hesitate to decide whether to commit scarce resources to multiyear matters or to approve sensitive investigative techniques. Shifting or unsettled leadership also undermines charging consistency: It leaves prosecutors unsure whether today's decisions will survive the week and invites challenges to charging instruments. *See, e.g.*, *United States v. Garcia*, No. 25-cr-00227, 2025 WL 2784640, at *18 & n.13 (D. Nev. Sept. 30, 2025) (suggesting that courts may dismiss indictments under their "supervisory authority" if an invalid appointment "affected the fairness of Defendants' prosecutions").

That disruption reaches the personnel who carry out the office's mission. Career prosecutors and professional staff need assurance that their leader lawfully holds office. Without that assurance, the office loses morale, struggles to recruit and retain talent, and exposes line prosecutors to professional risks arising from defects they neither created nor could cure. For example, the Ninth Circuit has explained that, when "the United States Attorney's appointment is invalid," a "delegation" of her purported authority to subordinates "is similarly invalid." *United States* v. *Gantt*, 194 F.3d 987, 998 (9th Cir. 1999), *overruled in part on other grounds*, *United States* v. *W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc). A district court recently invoked that principle, observing that a line prosecutor could be "bar[red]" from participating in a case "[i]f the facts



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

should show" that he or she had been "operating at the express direction of an official who [wa]s improperly appointed." *United States* v. *Giraud*, No. 24-cr-00768, 2025 WL 2196794, at *9 (D.N.J. Aug. 1, 2025), *aff'd in relevant part*, 160 F.4th 390 (3d Cir. 2025). The resulting uncertainty impairs the office's ability to perform as Congress intended and as public-safety interests require.

Unlawful provisional leadership also erodes public confidence and leaves indictments, subpoenas, and warrants vulnerable to collateral attack and protracted delays. "[J]ustice must satisfy the appearance of justice," *Young*, 481 U.S. at 811 (quoting *Offutt* v. *United States*, 348 U.S. 11, 14 (1954)), and an appearance of impropriety in prosecutorial authority "diminishes faith in the fairness of the criminal justice system in general," *id*. Courts confronting invalid interim or acting appointments have disqualified those officials from serving or participating in specified matters and cast doubt on their actions—including grand-jury practice and applications that only a United States Attorney may make. *See, e.g.*, *Giraud*, 160 F.4th at 406-407; *In re Grand Jury Subpoenas*, 814 F. Supp. 3d 284, 299-300 (N.D.N.Y. 2026); *United States* v. *James*, 810 F. Supp. 3d 752, 763-768 (E.D. Va. 2025); *United States* v. *Comey*, 810 F. Supp. 3d 768, 781-787 (E.D. Va. 2025); *United States* v. *Naviwala*, 825 F. Supp. 3d 451, 531 (D.N.J. 2026). The de facto officer doctrine does not resolve that vulnerability. It ordinarily "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient," but the Supreme Court has refused to apply the doctrine when the official's purported appointment offends the Appointments Clause. *Ryder* v. *United States*, 515 U.S. 177, 180, 182-183 (1995); *accord Gantt*, 194 F.3d at 998 ("Following the modern trend we choose not to ratify the actions of an improperly appointed officer of the United States under the ancient 'de facto officer' doctrine.").

Adopting the government's position in this case would produce each of those harms. Under the government's framing, Dkt. 20 at 29, Section 546(c)'s 120-day cap poses no obstacle whatsoever because the President could terminate any court-appointed officeholder and instruct the



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Attorney General to redesignate personnel who had already completed their provisional terms or install shadow United States Attorneys by demanding that the Attorney General delegate authority to an assistant under 28 U.S.C. §§ 509 and 510. *See supra* note 1 (identifying thirteen United States Attorney's offices led by first assistants). The government's reading is not merely bad policy—it is wrong. The Ninth Circuit recently rejected similar maneuvers, *see Jackson*, slip op. at 34, and for good reason: The government's argument would rewrite an Act of Congress by excising the 120-day limit on the Attorney General's appointees and eliminating the Judiciary's statutory role altogether.

In fact, it would restore the exact regime that Congress tried in 2006 and repealed in 2007. In the USA PATRIOT Improvement and Reauthorization Act of 2005, Congress briefly departed from the longstanding design by eliminating the district court's role and removing the 120-day limit on the Attorney General's interim appointments. Pub. L. No. 109-177, § 502, 120 Stat. 192, 246. Within a year, Congress reversed that experiment because it had "invited and abetted an apparent abuse of power" by the Executive that "threaten[ed] to undermine the effectiveness and professionalism of U.S. attorneys offices around the country." 153 Cong. Rec. S1993 (daily ed. Feb. 15, 2007). Congress thus restored both the 120-day limit and the district court's appointment power in their present form. *See* Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34, §§ 2, 3(b), 121 Stat. 224. That restoration was understood to "provide[] a practical incentive for the President to nominate a new U.S. attorney," thereby avoiding "prolonged circumvention of the Senate's advice and consent function for U.S. attorneys." *Restoring Checks & Balances in the Confirmation Process of U.S. Attorneys: Hearing on H.R. 580 Before the Subcomm. on Com. & Admin. Law of the H. Comm. on the Judiciary*, 110th Cong., 1st Sess. 132, 145 (2007) (statement of T.J. Halstead). The Executive may not revive by fiat the very scheme that Congress repealed.



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## CONCLUSION

The Court should grant Plaintiff's motion for a preliminary injunction.

* * *

The undersigned certifies that this amicus brief contains 3,469 words, in compliance with the Local Civil Rules.

Dated: August 18, 2026

Norman L. Eisen*
Stephen A. Jonas*
Diamond J. Brown*
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE, Suite 15180
Washington, D.C. 20003
Telephone: (202) 594-9958
Norman@democracydefenders.org
Steve@democracydefenders.org
Diamond@democracydefenders.org

By: *s/ David J. Burman*
Harry H. Schneider, Jr., WSBA No. 9404
David J. Burman, WSBA No. 10611
Kevin J. Hamilton, WSBA No. 15648
Jonathan P. Hawley, WSBA No. 56297
**ASHURST PERKINS COIE US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
Harry.Schneider@ashurstperkins.com
David.Burman@ashurstperkins.com
Kevin.Hamilton@ashurstperkins.com
Jonathan.Hawley@ashurstperkins.com

Nicholas S. Crown, WSBA No. 51260
John P. Bailey, WSBA No. 53688
Abigail F. Vice*
**ASHURST PERKINS COIE US LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
Nick.Crown@ashurstperkins.com
John.Bailey@ashurstperkins.com
Abigail.Vice@ashurstperkins.com

*Counsel for Amici Curiae*

**Pro hac vice application forthcoming*

**APPENDIX**

Amici are listed alphabetically with their former jurisdictions and dates of service.

Kent B. Alexander,
*Northern District of Georgia (1994-1997)*

Donald Ayer,
*Eastern District of California (1981-1986)*

Joe B. Brown,
*Middle District of Tennessee (1981-1991)*

Paul Charlton,
*District of Arizona (2001-2007)*

Paul Coggins,
*Northern District of Texas (1993-2001)*

Deirdre M. Daly,
*District of Connecticut (2013-2017)*

Harry D. "Donnie" Dixon, Jr.,
*Southern District of Georgia (1994-2001)*

Edward L. Dowd, Jr.,
*Eastern District of Missouri (1993-1999)*

Jenny Durkan,
*Western District of Washington (2009-2014)*

Timothy J. Heaphy,
*Western District of Virginia (2009-2015)*

B. Todd Jones,
*District of Minnesota (1998-2001, 2009-2013)*

David N. Kelley,
*Southern District of New York (2003-2005)*

Scott Lassar,
*Northern District of Illinois (1997-2001)*

Harry Litman,
*Western District of Pennsylvania (1998-2001)*

George H. Lowe,
*Northern District of New York (1978-1982)*

Tara K. McGrath,
*Southern District of California (2023-2025)*

John McKay,
*Western District of Washington (2001-2007)*

Michael D. McKay,
*Western District of Washington (1989-1993)*

Barbara McQuade,
*Eastern District of Michigan (2010-2017)*

Peter Neronha,
*District of Rhode Island (2009-2017)*

Denise E. O'Donnell,
*Western District of New York (1997-2001)*

Wendy Olson,
*District of Idaho (2010-2017)*

Ira H. Raphaelson,
*Northern District of Illinois (1989-1990)*

Sarah R. Saldaña,
*Northern District of Texas (2011-2014)*

Mac Schneider,
*District of North Dakota (2022-2025)*

Stanley A. Twardy, Jr.,
*District of Connecticut (1985-1991)*

Joyce Vance,
*Northern District of Alabama (2009-2017)*

Daniel G. Webber, Jr.,
*Western District of Oklahoma (1999-2001)*

William F. Weld,
*District of Massachusetts (1981-1986)*

William D. Wilmoth,
*Northern District of West Virginia (1993-1999)*



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000