The Honorable Stanley A. Bastian

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

ROGER ROGOFF,

Plaintiff,

vs.

DONALD J. TRUMP, in his official capacity as President of the United States; EXECUTIVE OFFICE OF THE PRESIDENT; TODD BLANCHE, in his official capacity as Attorney General of the United States; and U.S. DEPARTMENT OF JUSTICE,

Defendants.

Civil Action No. 2:26-cv-02566

**PLAINTIFF ROGER ROGOFF'S REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION**

NOTE ON MOTION CALENDAR: AUGUST 18, 2026

ORAL ARGUMENT REQUESTED



MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Rogoff Is Likely to Succeed on the Merits. ..... 2

1. Section 546(d) Precludes Rogoff's Firing. ..... 2

2. Rogoff's Firing Violates the Appointments Clause. ..... 6

3. The President's Removal Power Cannot Negate the Appointments Clause. ..... 8

B. Absent Relief, Rogoff Will Suffer Irreparable Harm. ..... 10

C. The Equities and Public Interest Strongly Favor Relief. ..... 11

D. This Court Should Not Enter a Stay or Impose a Bond. ..... 12

III. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.*, 139 F.4th 773 (9th Cir. 2025) .....3

*Bennett v. Isagenix Int'l, Inc. LLC*, 118 F.4th 1120 (9th Cir. 2024) .....11

*Berry v. Reagan*, 1983 WL 538 (D.D.C. Nov. 14, 1983) .....10

*Blanche v. Perlmutter*, 2026 WL 1871314 (U.S. June 30, 2026) .....8

*Bowsher v. Synar*, 478 U.S. 714 (1986).....6

*Carlucci v. Doe*, 488 U.S. 93 (1988).....5

*Cohens v. State of Virginia*, 19 U.S. 264 (1821).....10

*Cook v. Trump*, 804 F. Supp. 3d 14 (D.D.C. 2025).....10

*Dalton v. Specter*, 511 U.S. 462 (1994).....7

*Dolan v. USPS*, 546 U.S. 481 (2006).....3

*Free Enter. Fund v. PCAOB*, 561 U.S. 477 (2010).....9

*In re Hennen*, 38 U.S. 230 (1839).....5

*Home Depot USA, Inc. v. Jackson*, 587 U.S. 435 (2019).....3

*Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003) .....12

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) ....................12

*Mistretta v. United States*,
488 U.S. 361 (1989)....................1, 5

*Myers v. United States*,
272 U.S. 52 (1926)....................6, 9

*NLRB v. Aakash, Inc.*,
58 F.4th 1099 (9th Cir. 2023) ....................2

*NLRB v. SW Gen.*,
580 U.S. 288 (2017)....................7

*Parsons v. United States*,
167 U.S. 324 (1897)....................2

*Pievsky v. Ridge*,
98 F.3d 730 (3d Cir. 1996)....................2

*Sampson v. Murray*,
415 U.S. 61 (1974)....................10

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020)....................1, 8, 9

*Severino v. Biden*,
71 F.4th 1038 (D.C. Cir. 2023)....................2

*Stanley v. Gonzales*,
476 F.3d 653 (9th Cir. 2007) ....................2

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023)....................9

*Trump v. Boyle*,
145 S. Ct. 2653 (2025)....................11

*Trump v. Cook*,
146 S. Ct. 2234 (2026)....................11

*Trump v. Int'l Refugee Assistance Project*,
582 U.S. 571 (2017)....................11

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026)....................8



MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

*Trump v. Wilcox*,
145 S. Ct. 1415 (2025) ........ 11

*United States v. Donziger*,
38 F.4th 290 (2d Cir. 2022) ........ 7

*United States v. Gantt*,
194 F.3d 987 (9th Cir. 1999) ........ 4, 8, 9

*United States v. Giraud*,
160 F.4th 390 (3d Cir. 2025) ........ 3

*United States v. Hilario*,
218 F.3d 19 (1st Cir. 2000) ........ 4

*United States v. Jackson*,
2026 WL 2387099 (9th Cir. Aug. 17, 2026) ........ 4

*United States v. Kirilyuk*,
29 F.4th 1128 (9th Cir. 2022) ........ 5

*United States v. Martinez*,
565 F. Supp. 2d 1270 (D.N.M. 2008) ........ 4

*United States v. Naviwala*,
825 F. Supp. 3d 451 (D.N.J. 2026) ........ 4

**FEDERAL STATUTES**

28 U.S.C. § 516 ........ 9

28 U.S.C. § 518 ........ 9

28 U.S.C. § 519 ........ 9

28 U.S.C. § 541 ........ 1, 2, 3

28 U.S.C. § 546 ........ passim

**LEGISLATIVE MATERIALS**

153 Cong. Rec. S1994 (2007) ........ 4

Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007) ........ 4

**OTHER AUTHORITIES**

U.S. Dep't of Just., Off. of the Inspector Gen., *An Investigation into the Removal of Nine U.S. Attorneys in 2006* (Sept. 2008) ........ 4

# I. INTRODUCTION

Congress has exercised its express Appointments Clause authority to craft a statutory framework that ensures presidential control over the exercise of executive power while checking presidential overreach and protecting the Senate's advice-and-consent role. The President's firing of court-appointed U.S. Attorneys upends that careful balance, nullifies Congress's choice to vest interim appointment power in the courts after a period of time, and risks erasing the Senate from U.S. Attorney appointments altogether.

Instead of engaging with these issues, Defendants argue at length about 28 U.S.C. § 541(c). But their interpretation of that provision would render meaningless the limits 28 U.S.C. § 546 imposes on the Executive's ability to circumvent the Senate's advice-and-consent authority, which the statute's text, structure, and history confirm are integral to creating a framework that requires the President to respect the Senate's constitutional role.

Defendants fare no better in trying to ground their position in the Constitution. Section 546(d) is a stopgap measure that authorizes service by court-appointed interim U.S. Attorneys who remain under the Attorney General's plenary control—one expressly designed to incentivize the President to promptly fill the vacancy through constitutionally prescribed means. It falls squarely within Congress's authority to "provide tenure protections to certain inferior officers." *Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020). And it reflects the exact sort of "carefully crafted system of checked and balanced power" that the Supreme Court has repeatedly endorsed. *Mistretta v. United States*, 488 U.S. 361, 381 (1989).

At bottom, Defendants' behavior leaves little doubt that Rogoff's removal is part of the President's effort to eliminate Senate confirmation whenever he finds it inconvenient. In the 19 months since he took office, he has not nominated anyone to fill the vacant U.S. Attorney office here or in numerous districts—and has fired interim U.S. Attorneys lawfully appointed by courts, leaving headless offices run by officials the Senate has not evaluated. Defendants have not remotely justified this end-run around the Appointments Clause. This Court should enter a preliminary injunction.

# II. ARGUMENT

## A. Rogoff Is Likely to Succeed on the Merits.

### 1. Section 546(d) Precludes Rogoff's Firing.

Section 546(d) confers authority on the district court, under specified circumstances, to select who "serve[s]" as interim U.S. Attorney "until the vacancy is filled." The statute necessarily prevents the President from removing an interim U.S. Attorney appointed in this manner except by obtaining Senate confirmation: A district court does not have power to select who "serves" if another actor can remove that official—as has been made plain by the events here and in other districts where § 546(d) designees were removed. Defendants' contrary reading is inconsistent with the statutory text, renders the provision a nullity, and frustrates Congress's unambiguous intent to deny the President the ability to install whomever he wants to perform the duties of a U.S. Attorney indefinitely without Senate confirmation.

Defendants have no response to the statute's unambiguous text. They assert that a statute prescribing an officer's tenure should not be interpreted to insulate the officeholder from removal by the President. Opposition ("Opp.") 16-17. But the cases they cite establish only that language prescribing a specified term generally does not override the presumption that *the official who appointed the officeholder* can remove that officeholder before the term expires. *See Parsons v. United States*, 167 U.S. 324, 338-39 (1897) (statute providing fixed term did not displace presumption that President could remove Senate-confirmed officer); *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1104 (9th Cir. 2023); *Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023); *Stanley v. Gonzales*, 476 F.3d 653, 660 (9th Cir. 2007); *Pievsky v. Ridge*, 98 F.3d 730, 734 (3d Cir. 1996). That proposition does not support a presidential removal power here because the district court appointed Rogoff, not the President.

With nothing to say about the text of § 546(d), Defendants argue a *different* statute—§ 541(c)—governs instead. But that conclusion would upend the statutory scheme. Defendants concede that all other subsections of § 541 apply only to Senate-confirmed U.S. Attorneys. Opp. 14. Nevertheless, they contend that § 541(c) alone applies to court-appointed U.S. Attorneys

because it speaks about "[e]ach" U.S. Attorney. *Id.* 8 (quoting 28 U.S.C. § 541(c)). The "definition of [a] word[] in isolation" does not control a statute's construction; it must be read as a whole. *Dolan v. USPS*, 546 U.S. 481, 486 (2006). And Defendants concede that § 541(b), which immediately precedes § 541(c) and uses the same language, does *not* apply to § 546(d) appointees. Opp. 14. Defendants try to obscure that incongruity by insisting that § 541(b) "does not apply to court-appointed U.S. Attorneys because § 546(d) sets out a more specific tenure," whereas "§ 541(c) is the *only* provision governing removal of U.S. Attorneys." *Id.* That argument assumes the conclusion. Simply put, the word "each" cannot carry the weight Defendants place on it. The only logical interpretation of the "overall statutory scheme" is that § 541 governs Senate-confirmed U.S. Attorneys only, while § 546 governs interim U.S. Attorneys. *See Home Depot USA, Inc. v. Jackson*, 587 U.S. 435, 441 (2019). Any other conclusion would nullify § 546(d) and raise grave constitutional concerns. Mot. 11-15.

Nor do Defendants deal with the fact that their interpretation would eviscerate § 546(d). Instead, they offer an alternative account of § 546(d)'s "overriding" purpose as enabling the Executive to temporarily fill U.S. Attorney offices with its "preferred personnel." Opp. 17. To be sure, Congress gave the Executive ample opportunities to make temporary appointments under § 546(a) and the FVRA for a fixed period. But § 546(d) intentionally shifts the appointment power to the court after the Executive's authority under § 546(a) expires. 28 U.S.C. § 546(c)(2), (d). Congress designed that scheme to limit the Executive's ability to make interim appointments, not to authorize the Executive to deny the Senate its constitutional advice-and-consent role.

The history that prompted Congress to restore § 546(d) confirms as much.[1] After Congress briefly removed § 546(d) and the 120-day limit on the service of the Attorney General's designee in 2006, White House attorneys began engaging in a "bad faith" effort to

[1] Section 546's amendment history is exactly the "sort of textual evidence everyone agrees" is probative. *United States v. Giraud*, 160 F.4th 390, 400 & n.3 (3d Cir. 2025) (citation omitted); *see Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.*, 139 F.4th 773, 786 n.11 (9th Cir. 2025).

evade Senate advice and consent and get the Administration's "preferred person appointed" without Senate confirmation.[2] In response to such "abuses," Congress quickly restored the 120-day limit and the district court's appointment authority just one year after its elimination. 153 Cong. Rec. S1994 (2007); Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007). It is thus indisputably clear that § 546(d) was *not* meant to give the Executive Branch a mechanism to install its "preferred personnel" indefinitely, Opp. 17—it was intended to do the opposite.

Ninth Circuit precedent does not help Defendants either. Just yesterday, the Ninth Circuit observed that § 546 "does not contemplate a role for the President or the Attorney General after the expiration of the 120-day appointment." *See United States v. Jackson*, 2026 WL 2387099, at *5 (9th Cir. Aug. 17, 2026). Indeed, the court confirmed Rogoff's core point: "[T]he 120-day time limit of section 546(c)(2) ensures that the Senate retains its role in the appointment process." *Id.* And while Defendants invoke *United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999), *see* Opp. 9, it supports Rogoff. There, the Ninth Circuit recognized that § 546(d) designees differ from Senate-confirmed U.S. Attorneys because they serve a "specially limited term." *Gantt*, 194 F.3d at 999 n.5. And it rejected a challenge to the constitutionality of § 546(d), in part because "the President retains the power to replace the court-appointed United States Attorney *with an Attorney appointed by the President and confirmed by the Senate*." *Id.* at 1000 (emphasis added). If the President had the power to remove court-appointed U.S. Attorneys without appointing a Senate-confirmed replacement, the additional ability to remove them via that method would have been irrelevant.

Defendants' reliance on out-of-circuit cases fares no better. Those courts indisputably did not grapple with the bulk of the textual, structural, or constitutional arguments Rogoff has made. *United States v. Hilario*, 218 F.3d 19, 27-28 (1st Cir. 2000); *United States v. Naviwala*, 825 F. Supp. 3d 451, 474 (D.N.J. 2026); *United States v. Martinez*, 565 F. Supp. 2d 1270, 1275 (D.N.M. 2008). They are therefore neither precedential nor persuasive. *See United States v.*

---

[2] U.S. Dep't of Just., Off. of the Inspector Gen., *An Investigation into the Removal of Nine U.S. Attorneys in 2006* ch. 3, § III (Sept. 2008).

*Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) ("[C]ases are 'not precedential for propositions not considered.'" (citation omitted)).

Grasping at straws, Defendants invoke the specter of a court-appointed U.S. Attorney who engages in "gross misconduct" and cannot be removed. Opp. 11-13. That concern is misplaced. Far from creating indefinite officials who are "accountable to no one," *id.* 12, § 546(d) creates a temporary stopgap official who serves only after the President has exhausted his options for appointing temporary officials and only until the vacancy is filled. In the hypothetical circumstance that such an official engages in misconduct during what is supposed to be a brief window of service, the President may remove him by appointing a replacement via Senate confirmation (a process that may be completed very quickly).

In all events, if immediate action is needed, the appointing court possesses the authority to remove a U.S. Attorney engaging in the kind of malfeasance Defendants speculate about (a question not at issue in this case, which concerns *presidential* removal). Nothing in § 546(d)'s conferral of the appointment power to the district court indicates congressional intent to withhold the removal power that is traditionally "incident to the power of appointment." *Carlucci v. Doe*, 488 U.S. 93, 93 (1988); *see also In re Hennen*, 38 U.S. 230, 260 (1839) ("all inferior officers appointed" under Congress's vesting of the appointment authority in the President, the courts, or department heads "must hold their office at the discretion of the appointing power"). If the district court chooses to remove its designee and install another, it retains the ability to select who serves, consistent with the text of § 546(d).[3]

Nor would permitting a court to remove its appointee "impermissibly entangle" the courts and the Executive. Opp. 11. The Supreme Court has repeatedly endorsed statutory schemes that "commingle" the branches' functions, so long as they "pose no danger of either aggrandizement or encroachment." *Mistretta*, 488 U.S. at 382. Neither exists here. The President can avoid the

[3] Similarly, if the court's designee resigns, the court retains the power to appoint another official to serve until the vacancy is filled. That the court enjoys ongoing authority over appointment does not require the extreme conclusion that the statute prohibits resignation. *Contra* Opp. 15.

appointment of a § 546(d) designee altogether; once a § 546(d) designee is in office, the President enjoys extensive authority to direct and supervise the designee's actions through the Attorney General; and the President can replace a § 546(d) designee for any reason by appointing an officeholder with the Senate's consent. Mot. 16-17. Indeed, a court cannot invoke § 546(d)'s appointment authority until *after* the considerable period Congress provided for service by an interim U.S. Attorney appointed by the Attorney General. If a President has not forwarded a nomination to the Senate by that time, he has no one but himself to blame.

Finally, Defendants are wrong that Rogoff's interpretation would run afoul of *Myers v. United States*, 272 U.S. 52 (1926), and *Bowsher v. Synar*, 478 U.S. 714 (1986), by creating a congressional "veto over the removal of executive officers." Opp. 12-13. Unlike the statutes at issue there, the only potential "veto" Congress may exercise here is the one the Constitution confers on the Senate: the power to reject a President's nominee. Moreover, *Myers* and *Bowsher* concerned officers whose appointment required Senate confirmation. That distinction matters. *Myers* recognized that Congress may "provide for the removal of inferior officers" where, as here, it has chosen to vest their appointment "in some one other than the President with the consent of the Senate." 272 U.S. at 162. And *Bowsher*'s concern about Congress "aggrandiz[ing] itself at the expense of the other two branches," 478 U.S. at 727, has no sway where the officer was appointed by the Judiciary with no congressional involvement.

In sum, the text and structure of § 546(d) are consistent with only Rogoff's interpretation.

### 2. Rogoff's Firing Violates the Appointments Clause.

Defendants' primary response to the Appointments Clause violation here—that the Clause has no bearing because this case concerns removal, not appointment, Opp. 25—ignores the practical effect of removal. Under Defendants' view, the President could repeatedly fire court-designated U.S. Attorneys and leave in place his preferred prosecutor. That would violate the Appointments Clause twice over. It would not only nullify Congress's decision to empower the district court to make that appointment; it would also indefinitely leave the U.S. Attorney's office in the hands of an unappointed and unconfirmed official, creating a pathway to evade

Senate confirmation altogether and threatening "a critical structural safeguard of the constitutional scheme." *NLRB v. SW Gen.*, 580 U.S. 288, 293 (2017) (cleaned up).

Defendants' persistent course of conduct leaves no doubt that they are claiming a removal power in order to usurp the appointment power Congress assigned to the courts. Defendants fired Rogoff immediately after he was sworn in; that firing obviously was not performance based. Mot. 7. Rather, Defendants apparently fired Rogoff simply because he was appointed by the Court, just as they have done to other § 546(d) designees across the country. *Id.* 7-8. Attorney General Todd Blanche previously justified such firings on the theory that "[j]udges don't pick U.S. Attorneys, @POTUS does," *id.* 14 n.5, effectively asserting a unilateral authority to defy the plain terms of Congress's enactment. Defendants' assertion that Rogoff's removal has nothing to do with the Appointments Clause cannot be squared with their actions.

Defendants misread *United States v. Donziger*, 38 F.4th 290 (2d Cir. 2022), as standing for the proposition that removal power has no bearing on appointment power. Opp. 25. *Donziger* approved a statutory scheme in which district courts appoint special prosecutors whom the Attorney General may "direct" and "remove." 38 F.4th at 302. But even if Congress *could* create a scheme like that in *Donziger*, Congress has not done so here, wisely avoiding the "spectacle" of cyclical appointments and removals. *See id.* at 312 n.5 (Menashi, J., dissenting). Moreover, the scheme approved in *Donziger* did not implicate the Senate's advice-and-consent role, which, as explained, the Executive's unlawful removal of § 546(d) appointees threatens.

Defendants are also wrong that Rogoff's unlawful removal would be a purely statutory violation, and their reliance on *Dalton v. Specter*, 511 U.S. 462 (1994), is misplaced. Opp. 24-25. In *Dalton*, the Supreme Court recognized that not "every claim alleging that the President exceeded his statutory authority" is "constitutional." 511 U.S. at 474. But that does not mean that a President exceeding statutory authority *never* violates the Constitution. Here, Plaintiff's claim is not merely that Defendants exceeded statutory authority, but that their actions seek to eviscerate Congress's Appointments Clause power and to permanently evade the Senate's advice-and-consent role. That violates the Appointments Clause.

### 3. The President's Removal Power Cannot Negate the Appointments Clause.

The President's Article II powers cannot justify this intrusion into Congress's Appointments Clause authority. Section 546(d) falls squarely within Congress's authority to "provide tenure protections to certain inferior officers." *Seila Law*, 591 U.S. at 204.

Section 546(d) designees are appointed only as a backstop when the President has failed to secure Senate confirmation of a nominee for an extended period, and they serve only until the President fills the vacancy. During their limited term, they are subject to the Attorney General's "plenary authority." *Gantt*, 194 F.3d at 999. They thus cannot "unilaterally . . . dictate and enforce policy," *Seila Law*, 591 U.S. at 225, making removal protections permissible. Moreover, § 546(d) imposes a less burdensome protection than the "misconduct" and "cause" limitations the Supreme Court previously approved: The President may remove a § 546(d) appointee for *any* reason by obtaining Senate confirmation of his preferred pick. Mot. 16-17.

Defendants' retort that the Senate could refuse to confirm a replacement to fill the vacancy, leaving a § 546(d) appointee to serve indefinitely, Opp. 19-21, is just an objection to the Senate's role in the confirmation process. It is the President's responsibility to find someone the Senate will confirm. That the Senate may withhold consent to a nominee is a feature of Article II, not a violation.

Defendants also wrongly suggest that *Trump v. Slaughter*, 146 S. Ct. 2283 (2026), jettisoned removal protections for inferior officers, or cabined them to the facts of earlier decisions. Opp. 21-22. Defendants do not engage with *Slaughter*'s explicit reservation of "the fate of officials not before us"—e.g., inferior officers. 146 S. Ct. at 2306. Nor do Defendants address the Supreme Court's denial (the day after *Slaughter* was decided) of the Government's request to stay a decision enjoining the removal of an inferior officer. *Blanche v. Perlmutter*, 2026 WL 1871314 (U.S. June 30, 2026). Instead, Defendants rely on *Slaughter*'s general statements that officers "must be 'subject to removal by [the President]'" and in a "chain of dependence." Opp. 22 (quoting *Slaughter*, 146 S. Ct. at 2296, 2310). Neither helps. The President can remove a § 546(d) appointee through the Senate confirmation process. And a

§ 546(d) appointee is in a "chain of dependence" because he is subject to the "plenary authority" of the Attorney General. *Gantt*, 194 F.3d at 999. Defendants are left invoking an "accus[ation]" by "the dissenters" about the scope of the majority opinion. Opp. 22. This move only shows that *Slaughter* does not say what Defendants wish it did. "A dissenting opinion is generally not the best source of legal advice on . . . the majority opinion." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023).

Defendants' warnings about greenlighting removal protections for "virtually all inferior officers" are misplaced. Opp. 21, 24. The rare circumstances under which a § 546(d) appointment may occur, and the limited service it is intended to authorize, distinguish § 546(d) appointees from typical inferior officers. Nor are all inferior officers subject to the "plenary" authority of a principal officer, as is the case here. *Compare Gantt*, 194 F.3d at 999 (Attorney General's "plenary authority" over U.S. Attorneys), *with Free Enter. Fund v. PCAOB*, 561 U.S. 477, 504 (2010) (SEC's authority over inferior officers not "plenary"). For these reasons, recognizing Congress's authority to impose a removal protection here would not turn the "exception" into a "generally applicable rule." *Contra* Opp. 23.

Defendants also incorrectly argue that *Free Enterprise Fund* and *Seila Law* render Executive control meaningless absent an unfettered presidential removal power. *Id.* 24. Neither case stands for that broad proposition, and both are distinguishable. As noted, *Free Enterprise Fund* concerned limited supervisory authority; the SEC lacked the "power to start, stop, or alter individual . . . investigations." 561 U.S. at 504. By contrast, the Attorney General's power is "plenary." *Gantt*, 194 F.3d at 999; *see* 28 U.S.C. §§ 516, 518(b), 519. And *Seila Law* concerned a principal officer, not an inferior one. 591 U.S. at 238. It therefore has no purchase.

Finally, Defendants are wrong to suggest that presidential removal cannot violate the Appointments Clause. *See* Opp. 25. They ignore that the Supreme Court has repeatedly indicated that the Appointments Clause authorizes Congress to limit removal. *See Myers*, 272 U.S. at 162. More fundamentally, their argument would elevate the Vesting Clause over the Appointments Clause, in disregard of Chief Justice Marshall's instruction that constitutional

provisions "are equally obligatory, and are to be equally respected." *Cohens v. State of Virginia*, 19 U.S. 264, 393 (1821). Plaintiff's interpretation adheres to that directive—respecting the President's power by giving him plenary control over and the ability to remove court-appointed U.S. Attorneys while protecting Congress's power to vest the appointment of inferior officers as it sees fit and its advice-and-consent role in U.S. Attorney appointments. Defendants' interpretation, meanwhile, would eviscerate Congress's Appointments Clause powers.

**B. <u>Absent Relief, Rogoff Will Suffer Irreparable Harm.</u>**

Defendants acknowledge, as they must, that the loss of government employment can constitute an irreparable injury in an "extraordinary situation." Opp. 25 (quoting *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974)). Their attempt to analogize Rogoff to the low-level employee in *Sampson* fails. *Id.* 25-26. Indeed, Defendants themselves spend much time arguing Rogoff "bears no resemblance whatsoever to [a] low-ranking" official. *Id.* 20.

Thus, Rogoff's firing does not implicate merely the government's "internal affairs" or "contracts for personal service," *Sampson*, 415 U.S. at 83, and courts have recognized that such terminations constitute irreparable harm, Mot. 20 (collecting cases). Defendants cannot avoid that conclusion by citing the Attorney General's authority to reassign or supervise particular cases. Opp. 27. Rogoff's injury is not that he cannot work on a particular prosecution; it is that Defendants have prevented him from exercising the statutory responsibilities of the office. As numerous courts have concluded, the loss of a high-ranking official's statutory right to function constitutes the "extraordinary circumstances" that the Supreme Court contemplated in *Sampson*. *See, e.g.*, *Berry v. Reagan*, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983).

The harm to the U.S. Attorney's office only reinforces Rogoff's showing of irreparable harm. "The irreparable nature of th[e] injury is evident by the obviously disruptive effect the *denial* of preliminary relief will likely have" on the office's activities. *Id.* Contrary to Defendants' assertion, Opp. 27, courts frequently "take into account the harm that the official's removal would have on the agency" short of the agency's total destruction. *Cook v. Trump*, 804 F. Supp. 3d 14, 40-41 (D.D.C. 2025) (collecting cases).

**C. The Equities and Public Interest Strongly Favor Relief.**

Defendants' equities argument relies principally on their unfounded assertion that the Supreme Court's interim decisions in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), and *Trump v. Boyle*, 145 S. Ct. 2653 (2025), have established "that the balance of harms weighs against an individual seeking reinstatement as a U.S. attorney." Opp. 28. Defendants grossly overread those cases.

Fashioning a preliminary injunction is a fact-specific "exercise of discretion and judgment." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017). Neither *Wilcox* nor *Boyle* departed from that well-settled principle. Instead, the Court held in *Boyle* that *Wilcox* should inform equitable discretion in "like cases" only, emphasizing that those two cases did not differ "in any pertinent respect." 145 S. Ct. at 2654. The Court's decision in *Trump v. Cook*, 146 S. Ct. 2234 (2026), confirms the cases' limited scope. There, the Court denied the government's request to stay an order reinstating a Federal Reserve Governor. *Id.* at 2246. Defendants' insistence that *Cook* does not apply because it turned on its facts, Opp. 29-30, only confirms that there is no one-size-fits-all approach to the equities in removal cases.

Here, as explained in Plaintiff's motion, the equities cut definitively in Rogoff's favor. Unlike in *Wilcox* and *Boyle*, which concerned Senate-confirmed officials, this case concerns Congress's exercise of its constitutional authority to vest the appointment power in the court, plus Executive attempts to evade Senate advice and consent. The equities therefore differ in "pertinent respect[s]." *Boyle*, 145 S. Ct. at 2654.

Defendants' effort to minimize the harm to the public—by making the facile point that "the U.S. Attorney's office of this district could continue to function" without Rogoff, Opp. 29—does not alter the balance. The unlawful wielding of federal prosecutorial power by someone without authority to do so, collateral challenges to the Office's actions, and damage to public confidence injure the public interest. Those concerns are not hypothetical; they have already manifested elsewhere. *See* Compl. ¶¶ 48-68. On the opposite side of the ledger, any harm to Defendants would be self-inflicted. *Cf. Bennett v. Isagenix Int'l, Inc. LLC*, 118 F.4th 1120,

1129-30 (9th Cir. 2024). The President could end Rogoff's tenure by obtaining Senate confirmation for a replacement. But he has never nominated someone—even after the Court announced its intention to appoint an interim official seven months ago.

### D. <u>This Court Should Not Enter a Stay or Impose a Bond.</u>

Defendants' request for a stay should also be denied. For the reasons above, Defendants cannot show "a strong likelihood of success," irreparable injury, or that the balance of hardships "tips sharply in [their] favor." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011).

The Court should also deny Defendants' request for a bond. "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). None exists here. Although Defendants mention vaguely that Rogoff will receive "salary and benefit payments," Opp. 32, they will receive the benefit of the services for which Rogoff would be compensated.

## III. <u>CONCLUSION</u>

Plaintiff's motion should be granted.

## <u>Certification of Word Count</u>

I certify that this memorandum contains 4,198 words, in compliance with the Local Civil Rules.


MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

DATED this 18th day of August, 2026

HKM EMPLOYMENT ATTORNEYS LLP

*/s/ Jason A. Rittereiser*

Jason A. Rittereiser, WSBA No. 43628

*/s/ Daniel Kalish*

Daniel Kalish, WSBA No. 35815
600 Stewart Street, Suite 901
Seattle, Washington 98101
Telephone: (206) 838-2504
jrittereiser@hkm.com
dkalish@hkm.com

Attorneys for Plaintiff Roger Rogoff

DATED this 18th day of August, 2026

MUNGER, TOLLES & OLSON LLP

*/s/ Hailyn J. Chen*
Hailyn J. Chen (*admitted pro hac vice)*

*/s/ Victoria A. Degtyareva*
Victoria A. Degtyareva (*admitted pro hac vice*)
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
hailyn.chen@mto.com
victoria.degtyareva@mto.com

*/s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr. (*admitted pro hac vice*)

*/s/ Esthena Barlow*
Esthena Barlow (*pro hac vice pending*)

*/s/ Cynthia Long*
Cynthia Long (*admitted pro hac vice*)
601 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 220-1100
donald.verrilli@mto.com
esthena.barlow@mto.com
cynthia.long@mto.com

*/s/ Shannon Aminirad*
Shannon Aminirad (*admitted pro hac vice*)

*/s/ Connor Hoge*
Connor Hoge (*admitted pro hac vice*)
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000
shannon.aminirad@mto.com
connor.hoge@mto.com

Attorneys for Plaintiff Roger Rogoff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of August, 2026, I filed the foregoing document with the clerk of the Court for the United States District Court for the Western District of Washington using the CM/ECF system, which will send notification of such filing to all counsel of record.

DATED this 18th day of August, 2026.

*/s/ Klarisse L. Heffner*
Klarisse L. Heffner, Paralegal